650

39 A.3d 968

In the Interest of D.S., a Minor.

**Appeal of D.S.**

Supreme Court of Pennsylvania.

Argued Oct. 19, 2011.

Decided Feb. 21, 2012.

Scott Bruce Rudolf, Allegheny County Public Defender's Office, Pittsburgh, for D.S.

Rebecca Good McBride, Allegheny County District Attorney's Office, for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice TODD.

In this discretionary appeal, we consider whether 18 Pa. C.S.A. § 4914, which prohibits a person from furnishing false identification to law enforcement authorities, requires proof that those law enforcement authorities first identified themselves to the person and advised the person that he was the subject of an official investigation for a violation of law. Upon review, we answer this question in the affirmative. Accordingly, we reverse the Superior Court's decision, which affirmed the juvenile court's adjudication of delinquency.

The record in the instant case reveals that, on the afternoon of March 31, 2009, Pittsburgh City Police officers were investigating an armed robbery. According to the robbery victim, as he was standing at an intersection, a young boy pointed a gun at him, and robbed him of $10. The victim gave police a description of his assailant, and the police developed a list of individuals they knew matched the description; D.S. was one of those individuals. Detective John Rouse [1] and Officer Daniel Lang, both of whom were in plainclothes,[2] then "went out

---

[1]. For ease of discussion, when referring to Detective Rouse in conjunction with another officer, we will use the collective term "officers."

[2]. D.S. and the Commonwealth both concede there was no direct testimony regarding whether the three police officers in this case were in uniform or in plainclothes; however, the parties note that Detective Rouse testified he was assigned to the plainclothes division. N.T. Hearing, 6/1/09, at 8. Furthermore, both lower courts analyzed D.S.'s arguments with the assumption that the officers were in plainclothes, and this Court granted review to consider whether the Superior Court erred in upholding D.S.'s adjudication of delinquency under Section

actively looking for [D.S.] in essence to field contact him." N.T. Hearing, 6/1/09, at 9. The officers, who were traveling in a gold car with tinted windows, observed D.S. and two other individuals, Jamale Terry and Damon Goodwin, at a park outside an elementary school. The officers exited their vehicle with their weapons in hand, and approached D.S., Terry, and Goodwin, instructing them to put their hands in the air and "get up against the gate" in front of the school. *Id.* at 42. A third officer, Officer Fleske, arrived on the scene in a separate vehicle. The officers conducted a pat-down of D.S., Terry, and Goodwin, and asked them for their information, including their names, ages, and addresses. The officers did not identify themselves as police officers, nor did they state their purpose for stopping D.S. Terry testified that he, D.S., and Goodwin began asking the officers what they had done and why they were being searched. *Id.* at 43. Terry further testified that, after D.S. stated that his name was "D.B.," Terry heard one of the officers telling D.S. that the officer knew D.B.'s real name was D.S. According to the officers, D.S. began to swear at them, and he subsequently was handcuffed. Terry testified that he saw Detective Rouse throw D.S. on the ground and kick him after D.S. had been handcuffed. *Id.* at 47. By this time, a crowd of approximately 15 people was watching the incident. The officers called for back-up, and D.S. was arrested and charged with disorderly conduct and providing false identification to law enforcement under 18 Pa.C.S.A. § 4914.

On June 1, 2009, at a delinquency hearing before the Honorable Kathleen Mulligan, counsel for D.S. argued that D.S. did not violate Section 4914 by furnishing a false name and birth date to police officers because, in fact, D.S. went by both the name D.B. and D.S. In support of this argument, counsel presented the testimony of D.S.'s mother ("Mother"), who offered a printout from the Social Security Administration purporting to show that D.S. also went by the name D.B. D.S.

4914 based on the fact that the officers were in plainclothes and did not identify themselves to D.S. Accordingly, for purposes of our analysis, we accept that the officers were in plainclothes.

further argued that lying about one's birth date is not the same as providing false identification, in that a birth date is merely biographical information, not information about identity. The juvenile court found the authenticity of the document offered by Mother to be questionable, and adjudicated D.S. delinquent of the offense of providing false identification to law enforcement.[3] On June 23, 2009, the juvenile court directed that D.S. be placed in a juvenile treatment facility.

On July 22, 2009, D.S. filed a notice of appeal of his adjudication of delinquency to the Superior Court. In his court-ordered Pa.R.A.P. 1925(b) statement of matters complained of on appeal, he argued, *inter alia*, the evidence was insufficient to support his adjudication of delinquency under Section 4919 because the officers failed to identify themselves or advise D.S. that he was the subject of an official investigation prior to D.S. providing police with a false name. In her Rule 1925(a) opinion, Judge Mulligan noted "[t]he alleged absence of the elements of police identification and communication of investigation were not raised at the trial," and opined that the adjudication should be affirmed. Trial Court Opinion, 9/11/09, at 6.

The Superior Court upheld the adjudication of delinquency on appeal in an unpublished opinion. *In the Interest of D.S.*, 1239 WDA 2009, 4 A.3d 210 (Pa.Super. filed May 28, 2010). Without addressing D.S.'s failure to raise the issue at his hearing, the court concluded, relevant to the issue before this Court, that, although there was no direct evidence that the police officers affirmatively identified themselves, or indicated they were investigating a robbery, the totality of the circumstances established that D.S. was aware of these facts when he provided the police with a false name and birthdate. Specifically, the court noted that D.S. directed profanity at the officers, and stated that he did not have to tell them anything. The court also cited the testimony of D.S.'s cousin, who testified that she recognized the officers' gold car.

3. Judge Mulligan dismissed the disorderly conduct charge.

Subsequently, D.S. filed a petition for allowance of appeal with this Court, and, on March 30, 2011, this Court granted review to determine whether the Superior Court abused its discretion in upholding his adjudication of delinquency for violating Section 4914 in the absence of proof that the plain-clothes police officers identified themselves and advised D.S. that he was the subject of an official investigation.

As a preliminary matter, we address the issue, raised by the Commonwealth, that D.S. waived this argument by failing to raise it before the juvenile court. In its brief, the Commonwealth contends

Appellant's counsel never argued at the adjudication hearing that Appellant could not have violated Section 4914 because the officers neither identified themselves nor informed him that he was the subject of an official investigation. Instead, and in contradiction to his current argument that he lied, Appellant's attorney argued insufficient evidence existed to adjudicate Appellant delinquent because he never lied.... Hence, this is not a case where Appellant is challenging the sufficiency of the evidence for the first time on appeal. Rather, it appears to be one of presenting a different theory regarding the insufficiency of the evidence to an appellate court than a hearing court. While the Commonwealth is mindful that claims not raised before a lower court are waived, it defers to this Honorable Court regarding whether that holds true in this juvenile case where Appellant's current argument was raised for the first time on appeal (i.e., in his Pa.R.A.P. 1925(a) Statement and [brief to the Superior Court].

Commonwealth's Brief at 10–11 (record citations omitted).

The Commonwealth's position notwithstanding, we conclude D.S.'s argument before the juvenile court, the success of which was dependent on the juvenile's court's credibility findings, is more properly characterized as a challenge to the weight of the evidence, as opposed to a challenge to the sufficiency of the evidence. Thus, we disagree with the Commonwealth's contention that D.S. raises in the instant appeal a different theory of error to support the same claim he previously raised

below. Rather, D.S.'s argument that the evidence was insufficient to support his adjudication under Section 4914(a) was raised for the first time in his appeal to the Superior Court.

We further note that, if this were a criminal matter, D.S. could challenge the sufficiency of the evidence for the first time on appeal pursuant to Pa.R.Crim.P. 606(a)(7).[4] However, the Rules of Criminal Procedure generally are not applicable to juvenile proceedings, see Pa.R.J.C. 100 cmt., and the Juvenile Court Rules do not have a provision equivalent to Pa. R.Crim.P. 606(a)(7). Although this Court has determined that a juvenile has a right to appeal his adjudication of delinquency under our state constitution, and, further, that such appeal is governed by our rules of appellate procedure,[5] our appellate rules, while broadly precluding the raising of issues for the first time on appeal, see Pa.R.A.P. 302, do not expressly address whether a juvenile may raise a sufficiency challenge for the first time on appeal.

Nevertheless, our appellate courts have, on occasion, looked to the Rules of Criminal Procedure when reviewing an appeal from a juvenile court proceeding. See, e.g., In the Interest of

4. As noted in the quote above, while highlighting the issue, the Commonwealth does not take a position on whether D.S. is prohibited from raising a sufficiency claim for the first time on appeal.

5. In this regard, this Court has explained:

The Juvenile Act ... does not provide for a right of appeal. *In the Interest of McDonough*, 287 Pa.Super. 326, 332, 430 A.2d 308, 312 (1981). Thus, by failing to provide for a right of appeal or an appellate process in the Juvenile Act, the legislature has chosen not to shield juveniles from the consequences of their delinquent acts once the juveniles have been adjudicated.

Juveniles are, however, afforded a right of appeal by our state constitution. Article 5, § 9 provides *inter alia* that "there shall be a right of appeal from a court of record ... to an appellate court...." Pa. Const. Art. 5, § 9. The practice and procedure in appellate courts is governed by the Pennsylvania Rules of Appellate Procedure. Pa. R.A.P. 103. Therefore, appeals from the Juvenile Court, which is a court of record, to the Superior Court, which is an appellate court, are governed not by the Juvenile Act but by the Rules of Appellate Procedure.

*In the Interest of Thomas*, 533 Pa. 572, 577–78, 626 A.2d 150, 153 (1993); *see also In the Interest of M.M.*, 547 Pa. 237, 242, 690 A.2d 175, 177 (1997) (a juvenile has a right to appeal which is governed by the Rules of Appellate Procedure).

*Becker*, 370 Pa.Super. 487, 536 A.2d 1370 (1988) (reversing juvenile's adjudication after Commonwealth was permitted to amend its petition to change the identification of the victim at the adjudication hearing, noting that Pa.R.Crim. 229 (now Rule 564) would preclude the same action in a criminal action involving an adult defendant).

■ Upon review, we conclude that a juvenile, like an adult defendant in a criminal proceeding, should be permitted to challenge the sufficiency of the evidence for the first time on appeal. First, under Rule 520(A) of the Juvenile Court Rules, a post-adjudication motion is optional, implying that the failure to raise issues in such a motion may not be sanctioned. This is similar to the optional nature of a post-sentence motion in a criminal proceeding under Rule 720(B) of the Rules of Criminal Procedure. Furthermore, unlike a defendant in a criminal proceeding, if a juvenile fails to raise a sufficiency challenge before the juvenile court, and the claim is found to be waived on appeal, the juvenile cannot raise such a challenge under the Post Conviction Relief Act [6] because that act does not, by its terms, apply to juvenile proceedings. *See* 42 Pa.C.S.A. § 9543 (petitioner must be convicted of a crime); *see also In the Interest of Smith*, 396 Pa.Super. 624, 579 A.2d 889, 894 (1990). Thus, the consequences for a juvenile who chooses not to file an optional post-adjudication motion in these circumstances would be harsher than a similarly situated adult criminal defendant.

■ Finally, a challenge to the sufficiency of the evidence constitutes a pure question of law, over which an appellate court's standard of review is *de novo, Commonwealth v. Meals*, 590 Pa. 110, 912 A.2d 213 (2006), and the juvenile court may provide its analysis of a sufficiency challenge in its Pa.R.A.P. 1925(a) opinion. Accordingly, there is no impediment to an appellate court's review of this sufficiency claim in the first instance. For these reasons, we decline to hold that D.S. waived his sufficiency challenge, and now proceed to address the merits thereof.

6. 42 Pa.C.S.A. §§ 9541–9546.

This case requires us to interpret Section 4914, which is titled "False identification to law enforcement authorities," and provides:

A person commits an offense if he furnishes law enforcement authorities with false information about his identity after being informed by a law enforcement officer who is in uniform or who has identified himself as a law enforcement officer that the person is the subject of an official investigation of a violation of law.

18 Pa.C.S.A. § 4914.

D.S. maintains that the Superior Court's construction of Section 4914 is inconsistent with the plain language of the statute, which requires law enforcement officers to affirmatively identify themselves and state their purpose. In support of his argument, he relies on the Superior Court's decision in *Commonwealth v. Barnes*, 14 A.3d 128 (Pa.Super.2011).[7] In *Barnes*, the Commonwealth appealed the juvenile court's dismissal of a charge that the appellee violated Section 4914 by providing police with a false name during a traffic stop. The Superior Court affirmed the juvenile court's order dismissing the charge, explaining that Section 4914

does not make it illegal to provide to a law enforcement authority false information as to one's identity unless and until one is first apprised that he is the subject of an official investigation of a violation of law. If one provides false information as to his identity prior to that point, he has not violated the statute.

*Barnes*, 14 A.3d at 131. D.S. argues that, because there was no evidence that the officers identified themselves or advised D.S. that they were conducting an official investigation prior to D.S. providing the officers with false information regarding his identity, there was insufficient evidence to support his adjudication of delinquency under Section 4914.

Without acknowledging the Superior Court's recent decision in *Barnes*, the Commonwealth responds that the lower courts

7. The Superior Court's decision in *Barnes* was issued on February 3, 2011, after its decision in the instant case.

properly concluded that D.S. knew the officers were law enforcement officers, and that he was the subject of an official investigation of a violation of law, by virtue of the totality of the circumstances. In this regard, the Commonwealth suggests that the term "informed," as used in Section 4914, "is more expansive than the narrow definition put forward by [D.S.]." Commonwealth's Brief at 12. Asserting the term "informed," as used in Section 4914, is ambiguous, the Commonwealth argues that the plain meaning of the term may be "gleaned" from the dictionary definition. *Id.* at 13. Based on the dictionary definition of "informed" as "having or based on information," the Commonwealth avers that a person "can be 'informed' by explicit statements of a law enforcement officer or by the surrounding circumstances without the law enforcement officer uttering a word." *Id.* at 13, 14 (emphasis omitted).

When interpreting the language of a statute, we are guided by the polestar principle that we must ascertain and effectuate the intent of the General Assembly in enacting the statute. *See* 1 Pa.C.S.A. § 1921(a). We are further guided by the Statutory Construction Act's command that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b). Generally, the best indication of the General Assembly's intent in enacting a statute may be found in its plain language. *Martin v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing*, 588 Pa. 429, 438, 905 A.2d 438, 443 (2006).

Upon review, we find the language used by the General Assembly in Section 4914 is clear and free from ambiguity. As noted above, a person violates the statute if he furnishes law enforcement authorities with false information about his identity "after being informed by a law enforcement officer who is in uniform or who has identified himself as a law enforcement officer that the person is the subject of an official investigation of a violation of law." 18 Pa.C.S.A. § 4914. Under the plain language of the statute, three conditions must

be satisfied before an individual will be found to have violated the statute by providing false information about his identity. First, if the law enforcement officer is not in uniform, the officer must identify himself as a law enforcement officer. Second, the individual must be informed by the law enforcement officer that he is the subject of an official investigation of a violation of law. Third, the individual must have furnished law enforcement authorities with false information after being informed by the law enforcement officer that he was the subject of an official investigation of a violation of law.

We cannot agree with the Commonwealth's suggestion that an individual may be "informed" of an officer's identity and/or purpose by surrounding circumstances. In stating that an individual violates Section 4914 when he provides false information to law enforcement authorities "after being informed by a law enforcement officer" that he is the subject of an official investigation, the General Assembly made clear its intent that such information must be provided to the individual *by the law enforcement officer.* While the word "informed" might in other contexts carry the broader meaning the Commonwealth suggests, here it is linked to the law enforcement officer, indicating that the information conveyed must come from the law enforcement officer.

In short, there is no language in the statute to suggest that the General Assembly intended that an individual's knowledge could be derived from the surrounding circumstances. Accordingly, the Superior Court's holding to the contrary in the case *sub judice* was erroneous, and, indeed, inconsistent with its subsequent interpretation in *Barnes.*

In reviewing a claim that the evidence was insufficient to support a conviction, we must examine the evidence in a light most favorable to the Commonwealth and grant it, as verdict winner, all reasonable inference therefrom. *Commonwealth v. Hart,* 611 Pa. 531, 28 A.3d 898, 907 (2011). Herein, no evidence was presented that the plainclothes officers (1) identified themselves, or (2) informed D.S. that he was the subject of an official investigation of a violation of the law,

prior to D.S. providing the officers with false information regarding his identity. As a result, the evidence was insufficient to support D.S.'s adjudication of delinquency under Section 4914.[8] Accordingly, we reverse the order of the Superior Court which affirmed D.S.'s adjudication of delinquency.

Order reversed.

Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Chief Justice CASTILLE and Justices SAYLOR, BAER and McCAFFERY join the opinion.

Justice EAKIN files a dissenting opinion.

Justice EAKIN, dissenting.

I disagree with the Majority that an individual cannot be informed of an officer's identity or purpose in ways other than a formal scripted pronouncement. The Majority holds an officer must be the source of the information, which I take it means an officer not in uniform must specifically state aloud that he or she is a police officer and that the individual is the subject of an official investigation of a violation of law. My colleagues base this on the fact that "there is no language in the statute to suggest that the General Assembly intended that an individual's knowledge could be derived from the surrounding circumstances." Majority Op., at 660, 39 A.3d at 975. Respectfully, this rationale is misguided.

What a defendant knows, thinks, or intends, is *always* provable by circumstantial evidence, absent some authority to the contrary. This is a general rule of criminal jurisprudence, and if it is to be rendered inapplicable in a specific statute, it

8. In light of our disposition, we do not address D.S.'s argument that, even if the Superior Court's holding is deemed correct, retroactive application thereof would violate his due process rights under the fair warning doctrine, or his argument that, even if an individual can be imputed with knowledge of a police officer's identity and/or purpose, there was insufficient evidence to support such a finding in the instant case.

must be superseded with specificity. What is pertinent is that there is nothing in the statute that suggests knowledge may *not* be derived from the surrounding circumstances, as would elements of any other crime.

The Majority's statement is also amiss in that the individual's knowledge is not an element of the crime in the first place. The required element is what I will for sake of expedience refer to as pronouncement of authority and purpose. Proof the accused knew identity or purpose is not required by the statute—it is relevant, however, for it reduces the need for a formal pronouncement by the officers.

Pronouncement of authority and purpose is required by notions of due process—you cannot be convicted of lying to a policeman if you are not on notice that it is a policeman. The purpose of the pronouncement element is to ensure that knowledge, but where knowledge already exists, it becomes at most a perfunctory act. Here, the officers' identity and purpose were known in fact, pronounced, and made obvious to all from their appearance and their actions. The evidence shows the officers unambiguously conveyed their identity and purpose in a manner sufficient to make out the elements of 18 Pa.C.S. § 4914.

The relevant portion of the statute provides:

A person commits an offense if he furnishes law enforcement authorities with false information about his identity after being informed by a law enforcement officer who is in uniform or who has identified himself as a law enforcement officer that the person is the subject of an official investigation of a violation of law.

18 Pa.C.S. § 4914.

These officers were already familiar with D.S.—this is how they knew he was lying to them. One of the officers actually drove D.S. home on a prior occasion. D.S. knew who they were. D.S.'s cousin testified at trial that she even recognized the officers' *car*, not to mention the police themselves. However, if they were not known to be policemen beforehand, they certainly were when they got out of their car with firearms

drawn. The officers ordered D.S. and his companions to put their hands up. They patted them down. They ordered them against the fence while questioning them. They asked D.S. about his identity and his mother's whereabouts—D.S. responded by shouting profanities and telling them he did not have to answer, which is not only true but reflective of his knowledge of who he was talking to. They cuffed him and drove him away.

It is euphemistic to say these acts "conveyed their identity and purpose" to all—suffice it to say they were recognizable as police, and they conveyed to D.S. he was the subject of an investigation. The only way this was not sufficient is for us to inject a requirement that there be a verbalized proclamation, something that the legislature did not put in the statute—verbalization simply is not an element set forth therein. Of course a verbal announcement would satisfy this element, but in the reality of the moment, it would have been a superfluous and needless pronouncement. What is required by the statute is that the officer identifies himself and his purpose—there is no requirement how that identification must be made.

Indeed, the sufficiency of evidence supporting officers' identity and purpose was not even raised at the juvenile court—the defense did not suggest D.S. did not know these were officers, because the defense rested on the very fact that he *did* know who they were. D.S.'s trial counsel suggested D.S. gave multiple names because he was frightened by the officers, and argued the officers "had no doubt about who [D.S.] was." N.T. Trial, 6/1/09, at 71–72. D.S. never attempted to raise the question of the officers' method of identification at trial because it was counterproductive to his defense.[1]

The purpose of the elements in question is to ensure an individual is aware of an officer's identity and purpose—you

1. Because I do not find the evidence insufficient, I do not address the finding that this issue was not waived. This argument is contradictory though, as at the hearing D.S. argued he knew their identity, and on appeal argues insufficiency of evidence on the point. Where an element of a crime is not only uncontested at the guilt hearing, but is embraced as part of the defense strategy, asking for a reversal based on a lack of proof of that element certainly smacks of waiver.

may lie to a civilian, but you may not lie to an officer who you know to be investigating you. The pronouncement elements of § 4914 assure a person recognizes the authority of the person asking for identification. You need not talk to the police at all, but if you do, you cannot lie about who you are.

All sorts of people in all sorts of situations identify themselves without a word—there really is such a thing as "someone who needs no introduction," and these officers in this situation were just such people. Had these officers been undercover, rather than merely in plain clothes, others might not know their identity or official purpose, and no crime would be committed by lying to them. However, when identity and purpose are clearly recognized by any reasonable sentient person, and in fact were manifestly understood by this less-than-naïve subject and the attendant crowd of jeering onlookers, the circumstances afford sufficient proof that the officers identified themselves and their purpose. Accordingly, I must dissent.