J. A15010/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF:  E.V. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF:  E.V. | : | No. 1261 EDA 2015 |

Appeal from the Dispositional Order, April 7, 2015,
in the Court of Common Pleas of Philadelphia County
Juvenile Division at No. CP-51-JV-0000135-2015

BEFORE:  FORD ELLIOTT, P.J.E., DUBOW AND JENKINS, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED DECEMBER 16, 2016**

E.V. appeals from the juvenile dispositional order entered in the Court

of Common Pleas of Philadelphia County on April 7, 2015, adjudicating him

as a delinquent after the trial court found him guilty of possession of firearm

by minor and furnishing false identification to law enforcement authorities.[1]

We affirm.

The trial court set forth the following factual history:

> On February 6, 2015, Philadelphia Police
> Officer Matthew Blaszczyk Badge #6382, assigned to
> the 25th Police District, was on vehicular patrol near
> the 100 block of W. Gurney Street in Philadelphia
> County.  Officer Blaszczyk had been an officer in said
> area for nine years.  Officer Blaszczyk described the
> area as a high-crime area and the busiest area in the
> city, as far as narcotics and violent crimes.
> Officer Blaszczyk had recovered at least one hundred
> firearms, during the course of his career.

---

[1] 18 Pa.C.S.A. § 6110.1 and 18 Pa.C.S.A. § 4914, respectively.

At approximately 12:30 [p.m.], Officer Blaszczyk was partnered in a vehicle with Officer Gorman, Badge # 4909. Officer Blaszczyk observed a motor vehicle abruptly pull over without signaling, which constituted a motor vehicle violation. The vehicle then parked in front of a hydrant and the two officers initiated a vehicle investigation at said location. E.V. was seated in the passenger seat of said vehicle.

Immediately after the vehicle pulled over, both the operator and the passenger, E.V., exited the vehicle and attempted to walk away. Both E.V. and the driver, Luis Angala, began to walk south on Hope Street. Officer Gorman, who was closer to the driver, said "Hey. What are you guys doing? Stop. Come back." The driver turned around and started arguing with Officer Gorman saying "What? What do you want?" Officer Gorman replied "sit back down in the car. You are not free to leave."

Officer Blaszczyk exited the vehicle. Officer Blaszczyk walked behind E.V. and said "Hey. Where are you going?" Despite two or three requests, E.V. refused to stop. As he pursued E.V., Officer Blaszczyk initially observed the protrusion, which was being caused by a heavy object. Eventually, Officer Blaszczyk was able to grab E.V. and immediately felt the bulge in his right cargo pants pocket. E.V.'s pants were tight, which had made the bulge more visible. The bulge had been weighing down his pants pocket.

Upon patting E.V. down, he immediately identified the shape of a firearm. His immediate recognition of the firearm was based on his vast experience recovering firearms. Officer Gorman assisted Officer Blaszczyk in handcuffing E.V. E.V. identified himself as "Josh Ramos" several times to Officer Blaszczyk. E.V. first identified himself as "Josh Ramos" while sitting in the back of the police vehicle. Officer Blaszczyk tried to do a criminal background check for "Josh Ramos" and could not find any information. Officer Blaszczyk placed the

recovered firearm, a black Ruger, [.]380 caliber, LCP model, bearing serial number 37630766, on Property Receipt 3185925. E.V. denied having a license to carry a firearm. Officer Blaszczyk believed that E.V. appeared older than his stated age of seventeen.

Upon being arrested, Officer Blaszczyk transported E.V. to East Detectives for processing. Officer Blaszczyk asked E.V. to sign a medical checklist. Officer Blaszczyk observed E.V. sign the checklist as "E****." Then, E.V. crossed it out and said that he made a mistake. Officer Blaszczyk asked E.V. what was his name. E.V. responded "Josh Ramos"[.] Officer Blaszczyk asked E.V. why he signed "E****." Officer Gorman asked "what is your real name?" E.V. responded "I'm not giving you my real name." After several minutes, E.V. provided his real name of E**** V*****.

When Officer Blaszczyk first began pursuing E.V., he wanted to know E.V.'s identity, due to the pending motor vehicle investigation. Officer Blaszczyk wanted to check if E.V. had any pending warrants. Officer Blaszczyk was concerned for his safety due to the nature of the area. Ultimately, Officer Blaszczyk asked E.V. his name on several occasions, and had tried to figure out if his name was Joshua versus Josh. E.V. had stated that his name was "just Josh." After crossing out "E****", E.V. could not even write "Josh." The Commonwealth presented a Certificate on non-licensure, demonstrating that E.V. did not possess a license to carry a firearm. The Commonwealth also presented a ballistics report, showing that the recovered firearm was operable.

Trial court opinion, 7/15/15 at unnumbered pages 2-4 (citations to notes of testimony omitted).

The trial court set forth the following procedural history:

On January 17, 2015, Philadelphia police arrested [appellant], E.V., and charged him with [possession of firearm by minor and furnishing false identification to law enforcement authorities]. On February 6, 2015, E.V. litigated a motion to suppress before the Honorable Lori A. Dumas. After the denial of the suppression motion, E.V. went to trial and was found guilty of [both charges]. On said date, E.V. was adjudged delinquent and placed on probation, while the probation officer continued to plan for placement. On April 7, 2015, E.V. was committed to a Residential Treatment Facility at Pennsylvania State Department of Public Welfare for Appropriate Placement with a specific referral to YDC Cresson.

On April 21, 2015, E.V., through his attorney, the Defender Association of Philadelphia filed this appeal. . . .

*Id.* at unnumbered page 1 (citations to notes of testimony and footnote omitted).

Appellant raises the following issues for our review:

1. Did not the lower court err by denying the juvenile's motion to suppress evidence where the juvenile was first stopped and detained in the absence of reasonable suspicion or probable cause, and then subjected to a frisk?

2. Was not the evidence insufficient to prove the juvenile guilty beyond a reasonable doubt of the crime of false identification to law enforcement officer where the evidence failed to show that the juvenile was informed that he was the subject of an official investigation of a violation of law before the juvenile was asserted to have given a false name?

Appellant's brief at 4.

Having determined, after careful review, that the learned Judge Dumas, in her June 15, 2015 Pa.R.A.P. 1925(a) opinion, ably and comprehensively disposes of appellant's issues on appeal, with appropriate reference to the record and without legal error, we affirm on the basis of that opinion.

Juvenile dispositional order affirmed.


Jenkins, J. joins this Memorandum.

Dubow, J. files a Concurring and Dissenting Statement.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/16/2016

IN THE INTEREST OF:              :        COURT OF COMMON PLEAS
                                 :        PHILADELPHIA COUNTY
E.V.                             :        JUVENILE DIVISION
                                 :
APPEAL OF:                       :        SID # 403-94-17-6
                                 :
E.V.                             :        Petition # CP-51-JV-0000135-2015
                                 :
Type of Order: Opinion           :        Superior Court # 1261 EDA 2015

## OPINION

On January 17, 2015, Philadelphia police arrested the defendant, E.V., and charged him with VUFA-without license (18 Pa.C.S. §6106§§A1-F3), VUFA-public streets (18 Pa.C.S. §6108-M1), VUFA-possession by minor (18 Pa.C.S. §6110.1§§A-M1), and False Identification to Law Enforcement Officer (18 Pa.C.S. §4914§§A-M3). On February 6, 2015, E.V. litigated a motion to suppress before the Honorable Lori A. Dumas. After the denial of the suppression motion, E.V. went to trial and was found guilty of VUFA-possession by minor-M1 and False Identification to Law Enforcement Officer-M3. On said date, E.V. was adjudged delinquent and placed on probation, while the probation officer continued to plan for placement.[1] On April 7, 2015, E.V. was committed to a Residential Treatment Facility at Pennsylvania State Department of Public Welfare for Appropriate Placement with a specific referral to YDC Cresson.

On April 21, 2015, E.V., through his attorney, the Defender Association of Philadelphia, filed this appeal. The appellant claims that the court erred by denying the motion to suppress evidence and that the evidence was insufficient to sustain the verdict on the crime of false identification to law enforcement officer.

---

[1] A copy of the February 6, 2015 Notes of Testimony are hereto attached and incorporated as Exhibit A.

# FACTS

On February 6, 2015, Philadelphia Police Officer Matthew Blaszczyk Badge # 6382, assigned to the 25th Police District, was on vehicular patrol near the 100 block of W. Gurney Street in Philadelphia County. (Notes of Testimony, February 6, 2015, pp. 4-5) Officer Blaszczyk had been an officer in said area for nine years. (N.O.T., p. 9) Officer Blaszczyk described the area as a high-crime area and the busiest area in the city, as far as narcotics and violent crimes. (N.O.T., p. 9) Officer Blaszczyk had recovered at least one hundred firearms, during the course of his career. (N.O.T., p. 9)

At approximately 12:30PM, Officer Blaszczyk was partnered in a vehicle with Officer Gorman, Badge # 4909. Officer Blaszczyk observed a motor vehicle abruptly pull over without signaling, which constituted a motor vehicle violation. (N.O.T., p. 7) The vehicle then parked in front of a hydrant and the two officers initiated a vehicle investigation at said location. (N.O.T., p. 12) E.V. was seated in the passenger seat of said vehicle. (N.O.T., pp. 6 & 12)

Immediately after the vehicle pulled over, both the operator and the passenger, E.V., exited the vehicle and attempted to walk away. (N.O.T., pp. 6 & 8) Both E.V. and the driver, Luis Angala, began to walk south on Hope Street. (N.O.T., pp. 6 & 9) Officer Gorman, who was closer to the driver, said "Hey. What are you guys doing? Stop. Come back." The driver turned around and started arguing with Officer Gorman, saying "What? What do you want?" (N.O.T., p. 8) Officer Gorman replied "sit back down in the car. You are not free to leave." (N.O.T., p. 8)

Officer Blaszczyk exited the vehicle. (N.O.T., p. 8) Officer Blaszczyk walked behind E.V. and said "Hey. Where are you going?" (N.O.T., p. 6) Despite two or three requests, E.V. refused to stop. (N.O.T., pp. 6 & 8) As he pursued E.V., Officer Blaszczyk initially observed the protrusion, which was being caused by a heavy object. (N.O.T., pp. 10 & 13) Eventually, Officer Blaszczyk was able to grab E.V. and immediately felt the bulge in his right cargo pants pocket.

(N.O.T., p. 6) E.V.'s pants were tight, which had made the bulge more visible. (N.O.T., p. 9) The bulge had been weighing down his pants pocket. (N.O.T., p. 9)

Upon patting E.V. down, he immediately identified the shape of a firearm. (N.O.T., p. 6) His immediate recognition of the firearm was based on his vast experience recovering firearms. (N.O.T., p. 10) Officer Gorman assisted Officer Blaszczyk in handcuffing E.V. (N.O.T., p. 6) E.V. identified himself as "Josh Ramos" several times to Officer Blaszczyk. (N.O.T., p. 7) E.V. first identified himself as "Josh Ramos" while sitting in the back of the police vehicle. (N.O.T., p. 14) Officer Blaszczyk tried to do a criminal background check for "Josh Ramos" and could not find any information. (N.O.T., p. 11) Officer Blaszczyk placed the recovered firearm, a black Ruger, 380 caliber, LCP model, bearing serial number 37630766, on Property Receipt 3185925. (N.O.T., p. 6) E.V. denied having a license to carry a firearm. (N.O.T., p. 10) Officer Blaszczyk believed that E.V. appeared older than his stated age of seventeen. (N.O.T., p. 10)

Upon being arrested, Officer Blaszczyk transported E.V. to East Detectives for processing. (N.O.T., p. 6) Officer Blaszczyk asked E.V. to sign a medical checklist. (N.O.T., p. 7) Officer Blaszczyk observed E.V. sign the checklist as "E****." (N.O.T., p. 7) Then, E.V. crossed it out and said that he made a mistake. (N.O.T., p. 7) Officer Blaszczyk asked E.V. what was his name. (N.O.T., p. 7) E.V. responded "Josh Ramos" (N.O.T., p. 7) Officer Blaszczyk asked E.V. why he signed "E****." (N.O.T., p. 7) Officer Gorman asked "what is your real name?" (N.O.T., p. 7) E.V. responded "I'm not giving you my real name." (N.O.T., p. 7) After several minutes, E.V. provided his real name of E**** V*****. (N.O.T., p. 7)

When Officer Blaszczyk first began pursuing E.V., he wanted to know E.V.'s identity, due to the pending motor vehicle investigation. (N.O.T., p. 13) Officer Blaszczyk wanted to check if E.V. had any pending warrants. (N.O.T., p. 13) Officer Blaszczyk was concerned for his safety due to the nature of the area. (N.O.T., p. 13) Ultimately, Officer Blaszczyk asked E.V. his name on several occasions, and had tried to figure out if his name was Joshua versus Josh. (N.O.T., p. 13) E.V. had stated that his name was "just Josh." (N.O.T., p. 13) After crossing out

"E****", E.V. could not even write "Josh." (N.O.T., p. 15) The Commonwealth presented a Certificate on non-licensure, demonstrating that E.V. did not possess a license to carry a firearm. (N.O.T., p. 20) The Commonwealth also presented a ballistics report, showing that the recovered firearm was operable. (N.O.T., p. 20)

## LEGAL DISCUSSION

### The Motion to Suppress was properly denied.

This court recognizes that the forcible stop of a motor vehicle by a police officer constitutes a seizure of the driver and its occupants. However, the vehicle in this case pulled over abruptly on its own, without any compulsion. The evidence did not demonstrate any show of force on the part of the police. The vehicle's movement itself constituted a motor vehicle violation, which then created probable cause for the police to lawfully detain the driver of the vehicle. E.V. does not seem to be contesting the probable cause that existed with regard to the driver of the motor vehicle.

Once the officers had probable cause toward the driver, the police had the right to perform the traffic stop in a safe, efficient manner. *Maryland v. Wilson*, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997) established:

> In summary, danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car. While there is not the same basis for ordering the passengers out of the car as there is for ordering the driver out, the additional intrusion on the passenger is minimal. We therefore hold that an officer making a traffic stop may order passengers to get out of the car pending completion of the stop.

In *Commonwealth v. Pratt*, 930 A.2d 561 (Pa.Super. 2007), our Superior Court expanded on the reasoning of *Maryland v. Wilson*, to find that an officer may similarly order a passenger of a lawfully stopped vehicle to remain inside or get back into the vehicle. In doing so, the Superior Court joined numerous other state and federal courts in this ruling. *Pratt* states:

> We further recognize, as did the court in *Williams*, that traffic stops today present the same, if not greater, safety concerns for police officers than they did when *Wilson* was decided, and that the public interest in promoting the safety of police officers outweighs the marginal intrusion on personal liberty. We believe that allowing police officers to control all movement in a traffic encounter, and, in particular, eliminate the possibility of a passenger, who has an obvious connection to the vehicle's driver, from distracting or otherwise interfering with an officer engaged in a traffic stop, whether by exiting the car and remaining at the scene, or attempting to leave the scene for unknown reasons, is a reasonable and justifiable step towards protecting their safety.

*Pratt* makes clear that the officers in this case had a right to control the movements of E.V., in order to ensure their safety. In both *Pratt* and in this case, the front passenger abruptly exited the vehicle and began to walk away. In both *Pratt* and this case, the interaction took place in an area known for high-crime and violence. In *Pratt*, the police officer had 7 ½ years of experience. In this case, the officer had 9 years of experience. In *Pratt*, only the front passenger exited the vehicle abruptly and there were two police officers in the patrol car. In this case, **both** the front passenger **and** the driver simultaneously exited the vehicle abruptly. Clearly, the potential for danger and chaos is greater when police have two people disobeying orders at the same time. The fact that the driver, Luis Angala, began to engage in an argument with Officer Gorman only further enhanced the urgency to control the actions of E.V.

Still, Officer Blaszczyk's actions were measured. He first issued verbal commands to E.V. Officer Blaszczyk requested two or three times for E.V. to stop. E.V. refused to stop. Meanwhile, the driver continued to argue with his partner. With tensions rising, Officer Blaszczyk had no choice but to stay close to E.V. and in doing so, he clearly observed a bulge in E.V.'s pants pocket that appeared to be created by a heavy object. This observation now necessitated a greater show of authority, a full investigative detention, and a pat down. The pat-down was brief, minimal, and directly-targeted toward the suspicious bulge. Officer Blaszczyk immediately detected the firearm during the brief and targeted pat-down. Officer Blaszczyk's experience in recovering over one hundred firearms in said neighborhood immediately helped

form the basis to identify the presence of the firearm. Once the officer identified the firearm, he was entitled to retrieve the firearm and subsequently arrest E.V.

<u>The evidence was sufficient to support the guilty verdict on the</u>
<u>charge of False Identification to Law Enforcement Officer.</u>

The relevant statute is set forth below under 18 Pa.C.S. § 4914§§A in the Crimes Code as:

> **§ 4914. False identification to law enforcement authorities.**
> **(a) Offense defined.**--A person commits an offense if he furnishes law enforcement authorities with false information about his identity after being informed by a law enforcement officer who is in uniform or who has identified himself as a law enforcement officer that the person is the subject of an official investigation of a violation of law.

In order to satisfy the elements of this crime, there are two requirements. First, the defendant must furnish law enforcement authorities with false information about his identity. Second, the defendant must do so after being informed by a law enforcement officer that the defendant was the subject of an official investigation of a violation of the law. *In Re D.S.*, 614 PA 650, 39 A.3d 968 (2012).

E.V. does not deny that he provided false information. The evidence clearly shows that he provided the name of "Josh Ramos" and that he later provided the name of "E**** V*****", after Officer Gorman requested that E.V. tell him his "real name". Prior to said admission, E.V. also stated "I'm not giving you my real name." Therefore, it is clear that "Josh Ramos" was a fictitious name and that the first element of this charge is clearly met.

Instead, E.V. hereby claims that he was never notified by a law enforcement officer that he was the subject of an official investigation of a violation of the law, prior to providing the fictitious name. Because E.V. continued to provide the name of "Josh Ramos" throughout various phases of the official investigation and post-arrest, this claim must clearly fail. This was not a momentary lapse by E.V., as law enforcement gave him plenty of chances to tell them the truth. E.V. chose to provide the false name for a period of time sufficient for this court to have found him guilty.

E.V. identified himself as "Josh Ramos" several times to Officer Blaszczyk. E.V. first identified himself as "Josh Ramos" while sitting in the back of the police vehicle. This was **after** Officer Blaszczyk had told E.V. numerous times to "stop." This was **after** Officer Blaszczyk had recovered the gun from his pants pockets. This was **after** Officer Blaszczyk and his partner had handcuffed E.V. For E.V. to claim that he was not aware that he was the subject of an official investigation seems disingenuous. It should also be noted that E.V. was no stranger to law enforcement arrest procedure, as his counsel noted after the trial that E.V. had a "lengthy history." (N.O.T., p. 21)

This court believes that Officer Blaszczyk's calls to stop were sufficient indicators that an official investigation was underway. This court does not believe that the Officer Blaszczyk had to have uttered the words "you are now the subject of an official investigation of a violation of the law." If the calls to "stop" did not constitute sufficient notification, E.V. must have known that Officer Blaszczyk's discovery of the gun on his person and Officer Blaszczyk's placement of handcuffs on E.V. signified an official investigation. Certainly, when E.V. was sitting in the back of the police car and the officer was filling out forms and typing into his computer, these must have constituted signs of an official investigation.

This court recognizes that the holding in *In Re D.S.* specifically states "for purposes of offense of providing false identification to law enforcement, information regarding an officer's identity and purpose in investigating a violation of the law must come from the officer, not from the surrounding circumstances." *In Re D.S.*, 614 PA at 660. This court believes that sufficient notification was, in fact, delivered by Officer Blaszczyk. The facts in *In Re D.S.* are quite different, in that it involved plainclothes officers who were traveling in an unmarked car who approached juveniles with their guns drawn at some point after the crime had been committed. This case involves uniformed police officers travelling in a police vehicle. The police officers themselves witnessed the motor vehicle violation, watched the two vehicle occupants abruptly exit the vehicle and walk away while disregarding orders, and recovered a gun from the

individual's person. The initial false identification was provided in the back of a police vehicle, as opposed to inside of a park. More importantly, E.V. provided numerous other false identifications, even while in police custody at the detective's division, while filling out a medical checklist. Still, E.V. seeks to take harbor in the fact that the magic words "you are now the subject of an official investigation of a violation of the law" appear to have never been uttered.

## CONCLUSION

Accordingly, this court's Order should be affirmed.

BY THE COURT:

LORI A. DUMAS, J.