J-S10023-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT |
| | : | OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| | : | |
| VIRGILIO CISNERO-MAYO | : | |
| | : | |
| Appellant | : | |
| | : | No. 716 MDA 2025 |

Appeal from the Judgment of Sentence Entered May 1, 2025
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0004394-2024

BEFORE:  DUBOW, J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY BECK, J.:                    **FILED: APRIL 15, 2026**

Virgilio Cisnero-Mayo ("Cisnero-Mayo") appeals from the judgment of sentence entered by the York County Court of Common Pleas ("trial court") after a jury convicted him of false identification to law enforcement authorities ("False ID") and the summary offense of restrictions on alcoholic beverages.[1] On appeal, Cisnero-Mayo challenges the sufficiency of the evidence to sustain his False ID conviction.  Because there is insufficient evidence to establish that police informed him that he was the subject of an official investigation of a violation of law, we reverse his False ID conviction.

The record evidence reflects the following facts.  On June 27, 2024, Pennsylvania State Troopers Alecia Rohrer and Dylan Adams, working the midnight shift together in the same police vehicle, initiated a traffic stop of a

_____

[1] 18 Pa.C.S. § 4914(a); 75 Pa.C.S. § 3809(a).

vehicle for suspected driving under the influence.  N.T., 5/1/2025, at 107-09, 111, 114.  Cisnero-Mayo was seated in the front passenger seat.  *Id.* at 111-12.  Trooper Rohrer primarily interacted with the driver while Trooper Adams was with Cisnero-Mayo and other passengers in the back of the vehicle.  *Id.* at 110-12, 125.   Trooper Adams observed open containers of beer in the vehicle.  *Id.* at 112-13, 124.  When asked, Cisnero-Mayo admitted to Trooper Adams that the containers were his.  *Id.* at 112-13.  Trooper Adams indicated to Cisnero-Mayo that he was now conducting an official investigation and asked for Cisnero-Mayo's name and date of birth.  *Id.* at 114-16.  Cisnero-Mayo responded with a false name and birth date, which failed to return any records during a records check.  *Id.* at 115-16.  After investigation, Trooper Adams determined Cisnero-Mayo's correct identity and arrested him.  *Id.* at 117, 119.

Following a one-day trial, at which Trooper Adams was the sole witness,[2] a jury found Cisnero-Mayo guilty of False ID and the trial court convicted him of the summary offense.  The trial court proceeded immediately to sentencing, sentencing Cisnero-Mayo to guilt without further penalty on both convictions.  This timely appeal followed.

---

[2] The trial court admitted the Commonwealth's only exhibit—the motor vehicle recording of the incident, which contained audio of Trooper Rohrer but not Trooper Adams; the Commonwealth played the video for the jury without any audio.  *See* N.T., 5/1/2025, at 120, 122.  Neither trooper wore a body camera during the incident.  *See id.* at 121.

The sole issue Cisnero-Mayo raises on appeal is whether there was sufficient evidence to support his False ID conviction. Cisnero-Mayo's Brief at 4. Specifically, he argues that the Commonwealth failed to sustain its burden as Trooper Adams told Cisnero-Mayo that he was conducting "an official police investigation" but failed to inform Cisnero-Mayo that he was the subject of that investigation. *Id.* at 8-15. He contends that the plain language of the False ID statute and its strict enforcement by the judiciary mandates relief on this issue. *Id.*

We review a challenge to the sufficiency of the evidence according to the following standard:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim, the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Kitchen*, 181 A.3d 337, 341 (Pa. Super. 2018) (en banc) (brackets, quotation marks, and citation omitted). "Whether the evidence is sufficient to sustain a conviction presents a pure question of law for which our standard of review is de novo." *Commonwealth v. Wellman*, 344 A.3d 13, 18 (Pa. Super. 2025) (citation omitted).

The crime of False ID requires that the Commonwealth prove that a person "furnishes law enforcement authorities with false identification about his identity after being informed by a law enforcement officer who is in uniform or who has identified himself as a law enforcement officer that the person is the subject of an official investigation of a violation of law."  18 Pa.C.S. § 4914(a).  In interpreting section 4914(a), our Supreme Court has explained:

> [W]e find the language used by the General Assembly in Section 4914(a) is clear and free from ambiguity.… Under the plain language of the statute, three conditions must be satisfied before an individual will be found to have violated the statute by providing false information about his identity.  First, if the law enforcement officer is not in uniform, the officer must identify himself as a law enforcement officer.  Second, the individual must be informed by the law enforcement officer that he is the subject of an official investigation of a violation of law.  Third, the individual must have furnished law enforcement authorities with false information after being informed by the law enforcement officer that he was the subject of an official investigation of a violation of law.

*In re D.S.*, 39 A.3d 968, 974 (Pa. 2012).

In *D.S.*, plainclothes officers investigating a robbery approached juveniles in a park because D.S. matched the robbery victim's description of the assailant.  *Id.* at 970.  The police instructed D.S. and the others to put their hands in the air, patted them down, and asked for their names, ages, and addresses.  *Id.*  D.S. provided police with a false name.  *Id.*

D.S. challenged his False ID conviction, arguing that the officers did not identify themselves as police or expressly inform D.S. that he was under

- 4 -

investigation. *Id.* at 971. Our Supreme Court agreed with D.S., reasoning as follows:

> We cannot agree with the Commonwealth's suggestion that an individual may be "informed" of an officer's identity and/or purpose by surrounding circumstances. In stating that an individual violates Section 4914 when he provides false information to law enforcement authorities "after being informed by a law enforcement officer" that he is the subject of an official investigation, the General Assembly made clear its intent that such information must be provided to the individual by the law enforcement officer. While the word "informed" might in other contexts carry the broader meaning the Commonwealth suggests, here it is linked to the law enforcement officer, indicating that the information conveyed must come from the law enforcement officer.
>
> In short, there is no language in the statute to suggest that the General Assembly intended that an individual's knowledge could be derived from the surrounding circumstances.

*Id.* at 974-75.

Several years later in *Kitchen*, an en banc panel of this Court interpreted the term "informed" in the False ID statute, holding that "to sustain a conviction for False ID, the Commonwealth must prove that the individual was **told** by police that he or she was under investigation, and that must occur prior to the individual's presentment of false identity information." *Kitchen*, 181 A.3d at 345 (emphasis in original). This Court rejected the Commonwealth's argument that a person can be so informed by attendant circumstances, including the officer's conduct, without a spoken pronouncement. *Id.* at 341-345. The *Kitchen* Court explained:

- 5 -

The statute does not specifically state that a person may be "informed" of an investigation by inference alone. In crafting the False ID statute, the legislature immediately modified the term "informed" with the phrase, "by a law enforcement officer[.]" 18 Pa.C.S. § 4914(a). The use of the term "informed" in this context strongly suggests that the legislature intended a statutory element akin to a formal notice requirement, rather than imposing an additional *mens rea* element focused on the accused's inferential knowledge about the presence of an investigation at the time he or she presents false credentials.

*Id.* at 342-43.

In *Kitchen*, the police stopped Tyleesia Kitchen's vehicle for failure to use a turn signal. When an officer asked for her license, registration, and insurance, she could not produce any identification and gave a false name, birth date, social security card, and bank card. *Id.* at 338-39. When the officer ran the false name, it came back with a suspended license. *Id.* at 339. The police live stopped the vehicle for the suspended license and performed a search incident to the live stop, which uncovered Kitchen's actual driver's license on the driver's side floor. *Id.* at 339-40. This Court reversed Kitchen's False ID conviction because police never told her she was under investigation of a violation of law as required by section 4914(a). *Id.* at 345. In rejecting the Commonwealth's argument that the officer's conduct informed Kitchen that she was under investigation, this Court explained:

We note that the Commonwealth's loose interpretation of Section 4914(a) appears to mirror Former Justice Eakin's dissenting opinion in *D.S.* If there is any doubt about the meaning and effect of the Majority's decision in that case, such doubt should have been resolved by Justice Eakin's characterization of the *D.S.* Majority's position: "I disagree with the Majority that an individual cannot be informed of an officer's identity or purpose in ways

- 6 -

other than a formal scripted pronouncement." **D.S.**, 39 A.3d at 975 (Eakin, J., dissenting).

**Kitchen**, 181 A.3d at 345.

In the case before us, we begin by noting that Cisnero-Mayo does not challenge the sufficiency of the evidence to satisfy the elements that Trooper Adams was in uniform or that he provided false identification. **See** 18 Pa.C.S. § 4914(a). As to the element of notice, the record reflects that the prosecutor asked Trooper Adams at trial whether he indicated to Cisnero-Mayo that he was "conducting an official investigation" and Trooper Adams responded as follows:

> [TROOPER ADAMS:] Yes. Actually, my first year on the job I had a false ID case I ended up losing where I did not tell the person that it was an official police investigation. And as most people in jobs do, once you make the mistake once, you don't make it again. So for the past eight years[,] I have always made sure I tell people it is an official police investigation, if you are lying to me about who you are[,] you can be charged.

N.T., 5/1/2025, at 116.

The trial court determined that, although Trooper Adams "did not perfectly form his advisement about an official investigation," he sufficiently informed Cisnero-Mayo under the False ID statute when Trooper Adams told him that "**he** could be charged if he lied about who he was and this was done in conjunction with [Cisnero-Mayo] being told there was **an** official investigation underway." Trial Court Opinion, 8/28/2025, at 7 (emphasis in original).

As the above testimony shows, Trooper Adams told Cisnero-Mayo that he was conducting an official investigation and warned him that if he lied about his identity, he could be charged. However, even viewed in the light most favorable to the Commonwealth as the verdict winner, the record evidence does not reflect that the trooper informed Cisnero-Mayo that he was the subject of the investigation. Our precedent makes clear that to sustain his False ID conviction, there must be evidence that Trooper Adams told Cisnero-Mayo he was the subject of an official investigation before he provided false identification; the statutory notice requirement must be explicitly given and not be derived from surrounding circumstances or inference. *See D.S.*, 39 A.3d at 974; *Kitchen*, 181 A.3d at 342-43, 345. In other words, Trooper Adams was required to tell Cisnero-Mayo that an official investigation was underway, and also that Cisnero-Mayo was the subject of the investigation. Trooper Adams' testimony falls short of this mandate. As his testimony reflects, and the trial court found, Trooper Adams stated that he was "conducting an official investigation" but never informed Cisnero-Mayo that he was the subject of that investigation. Accordingly, this fell short of the statutory requirements of section 4914(a) that the police inform Cisnero-Mayo that he is the subject of an official investigation of a violation of law.

We therefore reverse Cisnero-Mayo's conviction. *See D.S.*, 39 A.3d at 975; *Kitchen*, 181 A.3d at 345; *see also Commonwealth v. Butts*, 359 MDA 2024, 2025 WL 882703 at *7-9 (Pa. Super. Mar. 21, 2025) (non-

precedential decision) (reversing a False ID conviction based upon trooper's failure to sufficiently inform the defendant that he was the subject of an official investigation of a violation of the law where the trooper read the defendant a state form to obtain consent to search his vehicle and told the defendant not to "bullshit" him and would be criminally charged if he did not give his real name).[3]  Because our decision does not upset the trial court's sentencing scheme on the remaining conviction of restrictions on alcoholic beverages we need not remand for resentencing.  **See Kitchen**, 181 A.3d at 345.

Judgment of sentence affirmed in part and reversed in part.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/15/2026

---

[3] We may cite non-precedential decisions of this Court filed after May 1, 2019, for their persuasive value.  **See** Pa.R.A.P. 126(b).