J-E04001-17

2018 PA Super 52

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| TYLEESIA KITCHEN, | |
| Appellant | No. 148 EDA 2016 |

Appeal from the Judgment of Sentence Entered December 9, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006204-2015

BEFORE: GANTMAN, P.J., BENDER, P.J.E., BOWES, J., PANELLA, J.,
SHOGAN, J., LAZARUS, J., OLSON, J., STABILE, J., and DUBOW, J.

OPINION BY BENDER, P.J.E.: **FILED MARCH 09, 2018**

Appellant, Tyleesia Kitchen, appeals from the judgment of sentence of 6-23 months' incarceration, followed by an aggregate term of two years' probation, imposed after she was convicted for drug offenses and, most pertinent to this appeal, false identification to law enforcement ("False ID"), 18 Pa.C.S. § 4914. Appellant claims the Commonwealth failed to present sufficient evidence that she was "informed" that she was "the subject of an official investigation of a violation of law" when she falsely identified herself. *Id.* After careful review, we agree, and reverse Appellant's conviction for False ID, vacate the corresponding sentence, but otherwise leave the remainder of Appellant's judgment of sentence intact.

The trial court summarized the facts adduced at trial as follows:

Philadelphia Police Officer Thomas Dempsey, assigned to the 35th District, testified that on June 2, 2015, at approximately 3:00 a.m., he performed his tour of duty in the 5531 North 5th Street area of the city of Philadelphia. Officer Dempsey stated that he was traveling northbound on 5th Street in a patrol car with his partner, Officer Hanton, approaching Duncannon [street] when he came into contact with [Appellant] operating a white Nissan Altima with New York tag GSD4632. He observed [Appellant] head westbound on Duncannon at 5th Street and then make a right-hand turn onto 5th Street, heading northbound, without using a turn signal. Officer Dempsey activated his lights and sirens and pulled [Appellant] over approximately three to four (3-4) blocks up at 5531 North 5th Street for failing to signal on the turn. Officer Dempsey stated that he then approached the driver's side of the vehicle and that [Appellant] was the only person in the vehicle.

Officer Dempsey testified that he asked [Appellant] for her license, registration, and insurance. [Appellant] was unable to provide any form of identification and notified Officer Dempsey that the car was rented. [Appellant] could not produce any documents to prove a rental agreement. Subsequent to failing to give Officer Dempsey any of the requested identification, [Appellant] gave him the name of "Chelsea Thomas" with a date of birth of 12/21/90. [Appellant] provided Officer Dempsey with a TD Bank credit card with the name "Chelsea Thomas" and a social security number. Officer Dempsey stated that from his investigation, the name "Chelsea Thomas" came back with a suspended license. Officer Dempsey stated that he and his partner then decided to live stop the vehicle for the suspended license. Officer Dempsey testified that he and his partner followed procedure: they notified the Parking Authority, removed [Appellant] from the vehicle, and performed a search incident to the live stop of the vehicle to "make sure there was [*sic*] no dangerous things in the vehicle and to inventory anything of the driver, money that was there, whatever was valuable, just to cover all of my bases."

Officer Dempsey testified that upon searching the vehicle pursuant to the live stop, he noticed a 12-ounce green can of Mountain Dew in the driver's seat cup holder, which he testified caught his eye because it was larger than usual, looked swollen, and there was no condensation. Officer Dempsey testified that he possesses ample experience discovering narcotics hidden inside soda cans; during his years on the force, he has uncovered

approximately fifteen (15) to twenty (20) false cans, most of them soda cans, and only one of them was empty and did not contain narcotics. From this experience, Officer Dempsey stated that he has made several narcotics arrests where narcotics were hidden in false cans.

Officer Dempsey testified that he touched the can and felt that it was rock hard[,] which further indicated from his experience that this was a false can. Officer Dempsey proceeded to pick up the can and to unscrew the top, which revealed that the can was indeed false; inside the can were seventy-six (76) small baggies with an off-white chunky substance, crack cocaine. Officer Dempsey stated that he arrested [Appellant] and placed her in the back of his vehicle. He continued his search of the vehicle pursuant to live stop procedure and discovered a driver's license with a different name under the brake pedal on the driver's side floor area. Officer Dempsey ran the discovered driver's license through the system to find that name also had a suspended license.

Officer Dempsey testified that he continued with the live stop and [was] completing paperwork when Officer Snell arrived as backup. Officer Snell completed an inventory search of the trunk of [Appellant]'s vehicle in Officer Dempsey's presence. Upon opening the trunk, Officer Dempsey observed a clear sandwich bag with eighty-four (84) zip tie baggies with crack cocaine, an off-white chunky substance inside them. Officer Dempsey stated that in total he recovered one hundred and sixty (160) baggies of crack cocaine later placed on Property Receipt No. 31976333. The false Mountain Dew can was placed on Property Receipt No. 3197634. A search incident to arrest recovered one hundred and forty-five dollars ($145) in US currency from [Appellant]'s front pants pocket later placed on Property Receipt No. 3197635. Officer Dempsey stated that the vehicle was live stopped and [Appellant] transported to the 35th District for processing.

Officer Dempsey testified that the identification was found on the driver's side floor area under the brake pedal. Officer Dempsey stated that the name of the driver's license was [Appellant]'s, Tyleesia Kitchen, and had a date of birth of 7/10/90 with a picture matching what [Appellant] looked like on the day in question. Officer Dempsey stated that this information was inconsistent with the information provided by [Appellant] when he first asked her for her identification. He explained that [Appellant]

- 3 -

first gave him the name "Chelsea Thomas" which, through further investigation, he believed to be [Appellant]'s girlfriend. Officer Dempsey restated that he determined that both "Tyleesia Kitchen" and "Chelsea Thomas" did not have valid licenses.

Officer Dempsey further testified that in his nine years on the job he has seen fifteen to twenty (15 -20) false cans. Officer Dempsey stated that most of these cans are soda cans and that he has also observed "Fix-A-Flat cans, a Pringles can, but the majority are soda cans." Officer Dempsey stated that he has found narcotics in these false cans fourteen (14) out of fifteen (15) times, specifying only one occasion where a false can was empty. Officer Dempsey testified that the can in the instant case caught his eye before he touched it. He stated, "[i]t looked like it was swelled up. There was no water dripping off of it as if it was cold. It was swelled-up looking and that caught my eye and that's why I touched it. I immediately felt it was rock hard."

When asked to describe the area where [Appellant]'s vehicle was stopped, Officer Dempsey testified that it was at 5th and Olney where [Appellant] pulled over to the right, placing her vehicle only partially in a parking spot. Officer Dempsey stated that [Appellant]'s vehicle was interfering with traffic as half of [Appellant]'s vehicle was sticking out in the north bound [*sic*] lane causing cars to have to go partly in the southbound lane to get past her. Officer Dempsey described the area as heavily populated and busy. Officer Dempsey stated that this area is well[ ]known by police to be a common site for loud music, narcotics calls and arrests.

On cross-examination, Officer Dempsey affirmed that [Appellant]'s car had New York plates and that it was rented. [Appellant] told Officer Dempsey that "Chelsea rented it." Because [Appellant] did not refer to herself in the first person, Officer Dempsey stated "that was one of the things that stuck out because either she was talking about herself in the third person or she just messed up." When asked to review the notes of testimony from the preliminary hearing, marked as Defense Exhibit 1 (D-1), Officer Dempsey affirmed that he stated that there were no cars parked on 5th Street, there were plenty of spots, and that [Appellant] had pulled over in a legal parking spot. Officer Dempsey further affirmed that he answered in the affirmative at the preliminary hearing when asked if it was not until he had removed [Appellant] from the vehicle and actually picked up the can that he realized it was a false can.

> Officer Dempsey testified that after he determined that Chelsea Thomas had a suspended license, he removed [Appellant] from the car and placed her in the police car, un-handcuffed and shut the police car door. Officer Dempsey affirmed that he began the inventory search of the vehicle once he verified that [Appellant] had a suspended license. Officer Dempsey explained that he believed [Appellant] to be "Chelsea Thomas" because she provided that name and the social security number.

Trial Court Opinion, 6/15/16, at 2-6 (footnote and citations omitted).

The Commonwealth charged Appellant with possession with intent to deliver a controlled substance (PWID), 35 P.S. § 780-113(a)(30); possession of a controlled substance, 35 P.S. § 780-113(a)(16); and False ID. Appellant filed a timely suppression motion on August 4, 2015. On October 7, 2015, the trial court denied Appellant's suppression motion, conducted a non-jury trial, and found Appellant guilty on all counts. On December 9, 2015, the trial court sentenced Appellant to 6-23 months' incarceration and 2 years' probation for PWID, and a concurrent term of 12 months' probation for False ID. The court imposed no further penalty for Appellant's possession conviction. Appellant filed a timely notice of appeal on January 5, 2016, and a timely, court-ordered Pa.R.A.P. 1925(b) statement on February 25, 2016. The trial court filed its Rule 1925(a) statement on June 15, 2016.

A panel of this Court affirmed Appellant's judgment of sentence on January 12, 2017. On January 26, 2017, Appellant filed a timely application for *en banc* reargument. On March 10, 2017, this Court granted *en banc* reargument, and simultaneously withdrew the January 12, 2017 memorandum affirming Appellant's judgment of sentence.

Appellant now presents the following question for our review: "Was not the evidence insufficient to sustain a conviction for false identification to law enforcement where the police officers never informed [A]ppellant that she was the subject of an official investigation?"  Appellant's Substituted Brief at 3.

Our standard of review of sufficiency claims is well settled:

A claim challenging the sufficiency of the evidence is a question of law.  Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt.  Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law.  When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

In essence, Appellant's claim challenges the trial court's interpretation of the False ID statute, which reads as follows:

A person commits an offense if he furnishes law enforcement authorities with false information about his identity **after being informed by a law enforcement officer** who is in uniform or who has identified himself as a law enforcement officer **that the person is the subject of an official investigation of a violation of law.**

18 Pa.C.S. § 4914(a) (emphasis added).  False ID constitutes a misdemeanor of the third degree.  18 Pa.C.S. § 4914(b).

Appellant argues that the police must **expressly** inform an individual that they are "the subject of an official investigation of a violation of law[,]"

- 6 -

for that individual's subsequent presentation of false identification to constitute a crime. 18 Pa.C.S. § 4914(a). The Commonwealth disagrees, contending that an individual can be so "informed" by the attendant circumstances, including the conduct of the investigating officer, and that no spoken pronouncement is required by the statute. Commonwealth's Substituted Brief at 7-9.

The trial court adopted the Commonwealth's position. It found that Appellant was informed that she was subject to an investigation by "the surrounding circumstances of the traffic stop[,]" which the court concluded, "implied there was an official investigation of a violation of law prior to the presentment of false identification." TCO at 11. The trial court distinguished the facts of this case from this Court's decision in **Commonwealth v. Barnes**, 14 A.3d 128 (Pa. Super. 2011). The Commonwealth supports the trial court's reasoning, arguing that the statute "does not require a verbal pronouncement, or any particular method of informing." Commonwealth's Substituted Brief at 5. Appellant argues that the trial court's interpretation of the False ID statute was rejected by our Supreme Court's decision **In re D.S.**, 39 A.3d 968 (Pa. 2012).

Here, the police did not make an express statement to Appellant that she was under investigation prior to her presentment of false credentials. There is also no question before us whether Appellant's credentials were false, or whether the police were in uniform. Appellant does not dispute that a reasonable person would likely understand that they were under investigation

given the attendant circumstances of this case. Accordingly, there are no facts in dispute, and the matter before us is a pure question of law regarding the interpretation of the legislature's use of the term, "informed[,]" in the False ID statute. Under such circumstances, "our standard of review is *de novo* and our scope of [review] is plenary." ***Commonwealth v. Crawley***, 924 A.2d 612, 614 (Pa. 2007).

> When interpreting a statute, the court must ascertain and effectuate the intent of the legislature and give full effect to each provision of the statute if at all possible. 1 Pa.C.S.A. § 1921(a); ***Commonwealth v. Brown***, 423 Pa. Super. 264, 266, 620 A.2d 1213, 1214 (1993); ***Commonwealth v. Edwards***, 384 Pa. Super. 454, 460, 559 A.2d 63, 66 (1989), *appeal denied*, 523 Pa. 640, 565 A.2d 1165 (1989). In construing a statute to determine its meaning, courts must first determine whether the issue may be resolved by reference to the express language of the statute, which is to be read according to the plain meaning of the words. 1 Pa.C.S.A. § 1903(a). ***See Commonwealth v. Berryman***, 437 Pa. Super. 258, 649 A.2d 961 (1994) (*en banc*).

> When construing one section of a statute, courts must read that section not by itself, but with reference to, and in light of, the other sections because there is a presumption that in drafting the statute, the General Assembly intended the entire statute to be effective. 1 Pa.C.S.A. § 1922. ***See Commonwealth v. Mayhue***, 536 Pa. 271, 307, 639 A.2d 421, 439 (1994); ***Commonwealth v. Berryman***, ***supra*** at 268, 649 A.2d at 965. Statute headings may be considered in construing a statute. 1 Pa.C.S.A. § 1924. However, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S.A. § 1921(b); ***Commonwealth v. Reeb***, 406 Pa. Super. 28, 34, 593 A.2d 853, 856 (1991), *appeal denied*, 530 Pa. 665, 610 A.2d 45 (1992).

***Commonwealth v. Lopez***, 663 A.2d 746, 748 (Pa. Super. 1995).

Our first impression of the express language of the False ID statute coincides with Appellant's interpretation. The statute does not specifically

state that a person may be "informed" of an investigation by inference alone. In crafting the False ID statute, the legislature immediately modified the term "informed" with the phrase, "by a law enforcement officer[.]" 18 Pa.C.S. § 4914(a). The use of the term "informed" in this context strongly suggests that the legislature intended a statutory element akin to a formal notice requirement, rather than imposing an additional *mens rea* element focused on the accused's inferential knowledge about the presence of an investigation at the time he or she presents false credentials. Our review of the relevant caselaw confirms this view.

In **Barnes**, a police officer stopped a vehicle for having air fresheners hanging from the rear view mirror. **See** 75 Pa.C.S. § 4524(c) (prohibiting "any object or material hung from the inside rearview mirror"). When the officer asked the passenger, Barnes, for his identification, Barnes offered a false name and birthdate. The officer ran a computer check on the given name, and no matching record was found. When the officer asked Barnes for his name again, Barnes replied with the same fake name and a different birthdate, but that information also did not check out. At that point, the officer informed Barnes that he was under investigation. Barnes then repeated the fake name and birthdate.

The Commonwealth charged Barnes with False ID. However, the trial court granted his motion for *habeas corpus*, thereby dismissing the charge, on the basis that "the official investigation element [of 18 Pa.C.S. § 4914(a)] cannot be satisfied solely by an investigation of the individual's providing false

information as to his identity." **Barnes**, 14 A.3d at 131. On appeal, this Court

agreed with that determination. **Id.**

The Commonwealth argued, alternatively, that Barnes was the subject

of an investigation into the Section 4524(c) violation or potential drug crimes.

We also rejected that argument, reasoning:

> The Commonwealth further suggests that the circumstances surrounding the traffic stop provided Officer Reeder grounds for an official investigation for a violation of law. The Commonwealth cites the presence of the air fresheners, which are recognized as useful in masking the odor of narcotics, the high crime area, and the fact that neither the driver nor [Barnes] could produce any actual identification. Assuming, for purposes of this discussion, that the circumstances of the stop provided grounds for an investigative detention, we would agree that the statute would be violated by the provision of false information after being provided proper notice. However, the stumbling block to the Commonwealth's argument is Officer Reeder's admission that the investigation he referenced in notifying [Barnes] that he was now the subject of an official investigation was the failure to provide truthful information. Officer Reeder was asked, "So your official investigation was involving that he was giving you a false name?" To this question, Officer Reeder replied, "Yes, after the second time." Going back to our initial point of discussion, if [Barnes] was not yet under official investigation for a violation of law when asked for his name and DOB, the provision of false information was not a violation of law. Thus, that failure to provide true information cannot constitute the basis for the official investigation of a violation of law. Officer Reeder may very well have been investigating [Barnes'] provision of false information regarding his identity; however, such investigation was not for a violation of law pursuant to Section 4914.

**Barnes**, 14 A.3d at 131–32 (emphasis added). The **Barnes** Court then

rejected the Commonwealth's final argument that the attendant

circumstances imposed a duty on Barnes to answer the officer's inquiries

truthfully. We dismissed that claim for want of any legal authority outside the "parameters set forth in Section 4914." *Id.* at 132.

We find no support in our ***Barnes*** decision for the Commonwealth's interpretation of Section 4914(a), and at least some modicum of support for Appellant's claim. ***Barnes*** is technically off-point in that it did not concern any legal determination regarding the form of the notice given. Indeed, the officer in that case specifically told Barnes that he was under investigation before Barnes offered false credentials for the third time. The only False ID violation at issue in ***Barnes*** appears to be the false statement Barnes made ***after*** he was specifically and verbally informed that he was under investigation. However, the ***Barnes*** Court did note that, "[l]iterally read, the statute in question does not make it illegal to provide to a law enforcement authority false information as to one's identity ***unless and until one is first apprised that he is the subject of an official investigation of a violation of law***." *Id.* at 131 (emphasis added).[1]

Our Supreme Court's decision in ***D.S.*** provides more recent and compelling support for Appellant's stricter interpretation of Section 4914(a). In that case, while investigating an armed robbery, plainclothes officers approached D.S. and two other individuals in a park, as D.S. matched the robbery victim's description of his assailant. ***D.S.***, 39 A.3d at 970. The police

---

[1] The term "apprise," means to "inform or ***tell (someone)***." The New Oxford American Dictionary 76 (1st ed. 2001) (emphasis added). This dovetails with the ***Barnes*** Court's reference to "proper notice" elsewhere in the opinion. ***Barnes***, 14 A.3d at 131.

ordered D.S. and his cohorts to put their hands in the air, and then demanded their names, ages, and addresses. *Id.* D.S. responded with a fake name. *Id.* The officers did not identify themselves as police, nor did they specifically and/or verbally inform D.S. that he was under investigation. *Id.* Nevertheless, D.S. was charged with, and ultimately adjudicated delinquent of, a False ID offense.

On appeal, D.S. argued, "the evidence was insufficient to support his adjudication of delinquency … because the officers failed to identify themselves *or advise D.S. that he was the subject of an official investigation* prior to D.S.['s] providing police with a false name." *Id.* at 971 (emphasis added). This Court initially "upheld the adjudication of delinquency[,]" reasoning that "although there was no direct evidence that the police officers affirmatively identified themselves, or indicated they were investigating a robbery, the totality of the circumstances established that D.S. was aware of these facts when he provided the police with a false name and birthdate." *Id.* (summarizing the Superior Court's memorandum).

However, our Supreme Court reversed that decision, reasoning:

> Upon review, we find the language used by the General Assembly in Section 4914 is clear and free from ambiguity. As noted above, a person violates the statute if he furnishes law enforcement authorities with false information about his identity "after being informed by a law enforcement officer who is in uniform or who has identified himself as a law enforcement officer that the person is the subject of an official investigation of a violation of law." 18 Pa.C.S.A. § 4914. Under the plain language of the statute, three conditions must be satisfied before an individual will be found to have violated the statute by providing

false information about his identity. First, if the law enforcement officer is not in uniform, the officer must identify himself as a law enforcement officer. Second, the individual must be informed by the law enforcement officer that he is the subject of an official investigation of a violation of law. Third, the individual must have furnished law enforcement authorities with false information after being informed by the law enforcement officer that he was the subject of an official investigation of a violation of law.

We cannot agree with the Commonwealth's suggestion that an individual may be "informed" of an officer's identity and/or purpose by surrounding circumstances. **_In stating that an individual violates Section 4914 when he provides false information to law enforcement authorities "after being informed by a law enforcement officer" that he is the subject of an official investigation, the General Assembly made clear its intent that such information must be provided to the individual by the law enforcement officer. While the word "informed" might in other contexts carry the broader meaning the Commonwealth suggests, here it is linked to the law enforcement officer, indicating that the information conveyed must come from the law enforcement officer._**

In short, there is no language in the statute to suggest that the General Assembly intended that an individual's knowledge could be derived from the surrounding circumstances. Accordingly, the Superior Court's holding to the contrary in the case *sub judice* was erroneous, and, indeed, inconsistent with its subsequent interpretation in **_Barnes_**.

**_D.S._**, 39 A.3d at 974–75 (Pa. 2012) (emphasis added).

Thus, not only is **_D.S._** directly on point for the issue before us, it supports Appellant's interpretation of Section 4914(a), contradicts the interpretation offered by the Commonwealth, and resolves any ambiguity left in the wake of our decision in **_Barnes_**. In order to sustain a conviction for False ID, the Commonwealth must prove that the individual was **_told_** by police

that he or she was under investigation, and that must occur prior to the individual's presentment of false identity information.

Nevertheless, the Commonwealth argues further that it was not the "surrounding circumstances," but "the uniformed officer's conduct[,]" which informed Appellant that she was under investigation. Commonwealth's Brief at 8-9. This further parsing of the *D.S.* decision and the text of Section 4914(a) is unconvincing. The uniformed officer's conduct is a "surrounding circumstance" that preceded Appellant's presentment of false identification.

We note that the Commonwealth's loose interpretation of Section 4914(a) appears to mirror Former Justice Eakin's dissenting opinion in *D.S.* If there is any doubt about the meaning and effect of the Majority's decision in that case, such doubt should have been resolved by Justice Eakin's characterization of the *D.S.* Majority's position: "I disagree with the Majority that an individual cannot be informed of an officer's identity or purpose in ways other than a formal scripted pronouncement." *D.S.*, 39 A.3d at 975 (Eakin, J., dissenting).

In sum, we conclude that Appellant's sufficiency claim is meritorious. As such, we reverse her conviction for False ID, and vacate the corresponding sentence. As our decision does not appear to upset the trial court's sentencing scheme,[2] we decline to remand for resentencing.

_____

[2] The trial court ordered Appellant's sentence of 1 year probation for False ID to run concurrent to the 2-year probationary tail attached to her sentence for PWID. As such, Appellant's aggregate sentence is not affected by our decision.

Judgment of sentence **_affirmed_** in part, **_reversed_** in part.  Jurisdiction **_relinquished_**.

President Judge Gantman, Judge Bowes, Judge Panella, Judge Lazarus, Judge Olson, Judge Stabile and Judge Dubow join this opinion.

Judge Shogan files a concurring and dissenting opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/9/18