J-S57034-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| WILL M. WILLIAMS, | : | |
| | : | |
| Appellant | : | No. 1066 EDA 2018 |

Appeal from the Judgment of Sentence March 6, 2018
in the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0002819-2017

BEFORE:    PANELLA, J., PLATT, J.* and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:    **FILED DECEMBER 05, 2018**

Will M. Williams (Appellant) appeals from his March 6, 2018 judgment of sentence imposed after he was found guilty of possession of a controlled substance with intent to deliver (PWID), possession of a controlled substance, possession of drug paraphernalia, and false identification to a law enforcement officer.  After review, we affirm.

On April 7, 2017, at about 4:00 p.m., Detective Corey Cooper of the Darby Township Police Department was at a car impound lot when he observed Appellant exit a car on the street and walk into the fenced yard of the lot.  Appellant walked directly to another car located in the yard of the lot, failing to check in at the office or with the lot owner before proceeding to that car.  The lot owner confronted Appellant in the yard about what he was doing, and the two got into a verbal altercation.  Detective Cooper approached and

---

*Retired Senior Judge assigned to the Superior Court.

could hear Appellant and the owner arguing about the car and its contents. Appellant then turned with the right side of his body facing Detective Cooper, and Detective Cooper observed in Appellant's coat pocket an amber-colored pill bottle with the prescription label torn off. Detective Cooper identified himself as a police officer and asked Appellant about the pills in his pocket. Appellant took the bottle out of his pocket, handed it to Detective Cooper, and said nervously "they aren't mine." N.T., 1/12/2018, at 10. He claimed the pills belonged to the person who was operating the car from which he had exited on the street, but when Detective Cooper looked over to the street, that car was gone. The parties stipulated that the bottle contained 37 pills of alprazolam, also known as Xanax,[1] a controlled substance.

Appellant was taken into custody, transported to the police station, and searched incident to arrest. Appellant had, *inter alia*, about $400 in U.S. currency in smaller denominations[2] on his person. At the police station, Detective Cooper was unable initially to confirm Appellant's identity because Appellant refused, on multiple occasions, to give Detective Cooper his correct name and birthdate. Eventually, Appellant gave Detective Cooper his real name.

Based on the foregoing, Appellant was charged with the aforementioned offenses and a nonjury trial was held on January 12, 2018. On January 16,

---

[1] Throughout the trial transcript, Xanax is spelled incorrectly as "Xanas."

[2] Specifically, Appellant had nineteen $20 bills, one $10 bill, one $5 bill, and three $1 bills. N.T., 1/12/2018, at 11.

2018, the trial court found Appellant guilty of the aforementioned offenses. On March 6, 2018, the trial court sentenced Appellant to an aggregate term of 9 to 24 months of incarceration. Appellant timely filed a notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant challenges the sufficiency of the evidence supporting his convictions for PWID and false identification to a law enforcement officer. Appellant's Brief at 5. Accordingly, the following principles apply.

> The standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom is sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt. The Commonwealth may sustain its burden of proving every element beyond a reasonable doubt by means of wholly circumstantial evidence.
>
> The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubt raised as to the accused's guilt is to be resolved by the fact-finder. As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record. Therefore, we will not disturb the verdict unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

*Commonwealth v. Wanner*, 158 A.3d 714, 717-18 (Pa. Super. 2017) (quoting *Commonwealth v. Vogelsong*, 90 A.3d 717, 719 (Pa. Super. 2014) (citations and quotations omitted)).

To sustain a conviction for the crime of PWID, the Commonwealth must prove that Appellant possessed a controlled substance with the intent to

manufacture or deliver it. **See** 35 P.S. § 780–113(a)(30); **Commonwealth v. Goodwin**, 928 A.2d 287, 291-92 (Pa. Super. 2007) (*en banc*).

> The intent to deliver may be inferred from an examination of the facts and circumstances surrounding the case. Factors which may be relevant in establishing that drugs were possessed with the intent to deliver include the particular method of packaging, the form of the drug, and the behavior of the defendant.

**Goodwin**, 928 A.2d at 292 (citations omitted). Another factor to consider is "large sums of cash found in possession" of a defendant. **Commonwealth v. Ratsamy**, 934 A.2d 1233, 1238 (Pa. 2007) (citation omitted). Further, "expert testimony is important in drug cases where the other evidence may not conclusively establish that the drugs were intended for distribution. Such testimony is admissible to aid in determining whether the facts surrounding the possession of controlled substances are consistent with intent to deliver." **Id.** at 1236-37 (citation omitted).

Here, it is undisputed that Appellant possessed 37 pills of Xanax that were not prescribed to him. **See** TCO, 5/14/2018, at 7; Appellant's Brief at 6. However, Appellant contends the Commonwealth did not prove he intended to deliver the Xanax. Appellant's Brief at 11-16.

The Commonwealth elicited testimony from Detective Cooper on direct examination that was consistent with the facts summarized *supra*. **See** N.T., 1/12/2018, at 5-14. With respect to Appellant's intent to deliver, the Commonwealth presented the expert testimony of Steven Banner, a detective in the narcotics unit of the Delaware County District Attorney's Office, Criminal

Investigation Division. He was qualified, without objection,[3] as an expert in the field of narcotics and narcotics investigations. *Id.* at 21-23. Detective Banner opined that based on his training, education, and experience, Appellant possessed the Xanax with intent to deliver. *Id.* at 23-26. Detective Banner explained that the ripped-off label on the bottle, high dosage and quantity of pills, the amount of cash found on Appellant, and the smaller denominations of bills demonstrated Appellant possessed the Xanax with intent to deliver. *Id.*

Specifically, Detective Banner testified that the torn label on the bottle is a "tell-tale sign of a drug dealer." *Id.* at 24. The pills were not prescribed to Appellant and the name of the person to whom they were prescribed was removed from the bottle. Nicknamed "mind racers," Xanax pills range from .25 to 2 milligrams each, and the pills recovered from Appellant were at the highest end of that range at two milligrams each. *Id.* According to Detective Banner, just one milligram of Xanax is highly potent. *Id.* Detective Banner testified that in his experience, "no one in their right mind would have 37 of these on their person, nor would a doctor typically prescribe over 30 pills" and the average user typically does not take more than one milligram per day.

---

[3] To the extent Appellant argues that Detective Banner "exceeded the scope of his purported expertise," *see* Appellant's Brief at 15, the claim is waived for failure to raise such an objection at trial. *See Commonwealth v. Viall*, 890 A.2d 419, 423-24 (Pa. Super. 2005) (finding waiver where Viall failed to object at trial to detective's testimony as exceeding scope of admissible expert testimony).

*Id.* He also opined that an addict would not have that quantity of pills on his person, explaining that even if an addict "got a good deal" and bought a month's supply, he would only take one pill per day and would not carry that month supply on him. *Id.* Detective Banner also found significant the $400 cash found on Appellant because in his experience, "the average person doesn't walk around with 400 bucks in their pocket."[4] *Id.* Further, according to Detective Cooper, Xanax is "commonly sold by drug dealers on the street." *Id.* at 10. When Detective Cooper asked Appellant about the pills in his pocket, Appellant acted nervously and said the pills were not his. *Id.* Based on the foregoing, we find that the evidence at trial and all reasonable inferences therefrom, when viewed in a light most favorable to the Commonwealth as the verdict winner, are sufficient for the trial court, as factfinder, to find Appellant intended to deliver the Xanax.

To sustain a conviction for the crime of false identification to a law enforcement officer, the Commonwealth must prove that Appellant

> furnishe[d] law enforcement authorities with false information about his identity after being informed by a law enforcement officer who is in uniform or who has identified himself as a law enforcement officer that [Appellant] is the subject of an official investigation of a violation of law.

---

[4] To the extent Appellant argues that there could have been an innocent explanation for his possessing $400 cash, *see* Appellant's Brief at 14, we note that the trial court, as factfinder, was free to believe all, part, or none of Detective Banner's testimony. *See Commonwealth v. Watkins*, 843 A.2d 1203, 1211 (Pa. 2003).

18 Pa.C.S. § 4914(a). The trial court offered the following in support of its determination that Appellant falsely identified himself to law enforcement.

> Here, [Appellant] was arrested and in a holding cell at the police station. Detective Cooper's actions made it clear that [Appellant] was arrested and under investigation for possession of drugs. [Appellant] then lied about his identity. It was only after [Appellant] realized he was not going anywhere and would eventually be identified that he finally revealed his true identity. Detective Cooper's conduct clearly and unequivocally informed [Appellant] that he was being officially investigated. This evidence is sufficient to prove his guilt.

TCO, 5/14/2018, at 9.

Appellant argues that there was no evidence that police expressly warned him that he was under official investigation, in violation of **Commonwealth v. Kitchen**, 181 A.3d 337 (Pa. Super. 2018) (*en banc*) and **In re D.S.**, 39 A.3d 968 (Pa. 2012). Appellant's Brief at 19. In **Kitchen**, Kitchen was pulled over by a police officer for a traffic violation. 181 A.3d at 338. When the officer approached her car, he asked for her license, registration, and insurance. **Id.** When she could not produce the documents, Kitchen provided false identification. **Id.** at 339. She was charged with and convicted of, *inter alia*, the offense of false identification to a law enforcement officer. **Id.** at 338. On appeal, Kitchen argued that her conviction could not stand because she had not been informed she was the subject of an official investigation. **Id.** at 341. In interpreting the statute, this Court found that "to sustain a conviction for [false identification to a law enforcement officer], the Commonwealth must prove that the individual was told by police that he

or she was under investigation, and that must occur prior to the individual's presentment of false identity information." *Id.* at 345.

Further, in *Kitchen* this Court examined *D.S.*, explaining that

while investigating an armed robbery, plainclothes officers approached D.S. and two other individuals in a park, as D.S. matched the robbery victim's description of his assailant. The police ordered D.S. and his cohorts to put their hands in the air, and then demanded their names, ages, and addresses. D.S. responded with a fake name. The officers did not identify themselves as police, nor did they specifically and/or verbally inform D.S. that he was under investigation. Nevertheless, D.S. was charged with, and ultimately adjudicated delinquent of, a [false identification to a law enforcement officer] offense.

*Kitchen*, 181 A.3d at 344. *In D.S.*, our Supreme Court made clear that

[u]nder the plain language of the statute, three conditions must be satisfied before an individual will be found to have violated [18 Pa.C.S. § 4914] by providing false information about his identity. First, if the law enforcement officer is not in uniform, the officer must identify himself as a law enforcement officer. Second, the individual must be informed by the law enforcement officer that he is the subject of an official investigation of a violation of law. Third, the individual must have furnished law enforcement authorities with false information after being informed by the law enforcement officer that he was the subject of an official investigation of a violation of law.

39 A.3d at 974. Because the officers did not identify themselves as police or specifically inform D.S. that he was under investigation, our Supreme Court found the evidence was insufficient to support D.S.'s adjudication of delinquency. *Id.* at 975.

We find the instant case distinguishable from *Kitchen* and *D.S.* In those cases, the appellants were not in police custody when they provided fake

names. Rather, they were approached and asked for their identification by law enforcement officers, but were unaware at that point why police were questioning them. In contrast here, Appellant already had been informed he was being taken into police custody for drug violations and had been transported to the police station when he provided a fake name. N.T., 1/12/2018, at 11, 13. As such, Appellant need not have been told expressly by police that he was the subject of an official investigation before police asked for his identification at the station. Thus, when viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we find there is sufficient evidence to meet the three conditions of the statute: (1) Detective Cooper identified himself and his partner as police officers, *id.* at 9; (2) Appellant was informed he was the subject of an official investigation, as evidenced by his arrest for drug violations and transport to the police station, *id.* at 11, 13; and (3) Appellant gave law enforcement officials fake names, *id.* at 13.

Based on the foregoing, we conclude that the Commonwealth introduced sufficient evidence to establish that Appellant committed the aforementioned crimes.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 12/5/18