J-A22029-19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| CHARLES GLAZE, | : | |
| | : | |
| Appellant | : | No. 355 EDA 2019 |

Appeal from the Judgment of Sentence Entered December 10, 2018
in the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0005345-2018

BEFORE:  MURRAY, J., STRASSBURGER, J.* and PELLEGRINI, J.*

MEMORANDUM BY STRASSBURGER, J.:          **FILED NOVEMBER 19, 2019**

Charles Glaze (Appellant) appeals from his December 10, 2018 judgment of sentence imposed after he was found guilty of false identification to a law enforcement officer.  Upon review, we reverse Appellant's judgment of sentence.

We glean the following facts from the record.  On July 31, 2018, at about 1:00 p.m., Appellant was a passenger in a vehicle driven by Tanisha Chandler.  Chandler's boyfriend, Damond Dade, was also in the vehicle.  At some point, Chandler and Dade began to argue.  At about the same time, the vehicle broke down and Chandler pulled it into the parking lot of a local establishment.  Chandler exited the vehicle and walked away, taking Appellant's cell phone with her.  Chandler used Appellant's phone to call police, and during her call,

_____

* Retired Senior Judge assigned to the Superior Court.

she reported a verbal altercation between her and her boyfriend and requested assistance.

Police Officer Brian Makowski responded to the scene.[1] He observed Dade and Appellant in the parking lot, but did not see Chandler. At some point while Officer Makowski was at the scene, Police Chief Miller[2] arrived to assist. According to Officer Makowski, Chief Miller spoke with Chandler nearby since she had walked down the street. Officer Makowski first spoke with Dade. Dade confirmed the verbal altercation was between Chandler and Dade. After investigating for about 15-20 minutes, including speaking with Chief Miller, Officer Makowski determined that no charges would be filed against Chandler or Dade.

Next, Officer Makowski turned his attention to Appellant. Officer Makowski confirmed during his testimony that he did not suspect Appellant of violating the law. Nonetheless, Officer Makowski asked Appellant for identification. Appellant responded that "he didn't want to be involved" and ultimately provided a false name, birthdate, and social security number. N.T., 1/16/2019, at 20. Officer Makowski searched the information in his vehicle's computer system, and it returned a result of no records found. From his

---

[1] Officer Makowski testified that he works part-time as a police officer for the Borough of Rockledge, Montgomery County, Pennsylvania and at that time, had been an officer for about six months. N.T., 1/16/2019, at 6.

[2] The notes of testimony do not indicate Miller's first name. Miller did not testify at trial.

vehicle, Officer Makowski contacted the county dispatch radio with the same information, which also returned negative results.

Officer Makowski returned to Appellant and advised him that none of his identification information was located. At this point, which was after Appellant had already given false identification for the first time, Officer Makowski testified that he "advised [Appellant] that he was under official investigation, and if he continued to provide false information[,] he would be charged criminally." *Id.* at 18; *see also id.* at 100.

Appellant then provided false identification to Officer Makowski a second time. That computer search likewise returned no information. According to Officer Makowski, after the second negative records search, Appellant insisted he had provided the correct identification, so Officer Makowski "instructed [Appellant] at that time that he had to be identified." *Id.* at 21. He then placed Appellant in the back of the police vehicle and transported him to the police station for fingerprint identification. At the station, Appellant provided false identification a third time, but eventually, when Appellant was asked to sign his fingerprint card, he gave his correct name and other identifying information.

Officer Makowski testified that he was at the scene for about an hour. He stated that he spent the first 15-20 minutes of his investigation "focusing on the domestic incident and the remaining time was spent trying to identify [Appellant]." *Id.* at 23.

Based on the foregoing, Appellant was charged with false identification to a law enforcement officer. After a nonjury trial held on January 16, 2019,[3] the trial court found Appellant guilty and sentenced him the same day to a term of time served to 12 months of incarceration. Appellant timely filed a notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant challenges the sufficiency of the evidence supporting his conviction for false identification to a law enforcement officer. Appellant's Brief at 2. Accordingly, the following principles apply.

> The standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom is sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt. The Commonwealth may sustain its burden of proving every element beyond a reasonable doubt by means of wholly circumstantial evidence.
>
> The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubt raised as to the accused's guilt is to be resolved by the fact-finder. As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record. Therefore, we will not disturb the verdict unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

---

[3] At the close of the Commonwealth's case, Appellant moved for judgment of acquittal. N.T., 1/16/2019, at 45. After an off-the-record discussion among the trial judge and counsel for the parties, as well as on-the-record argument by both counsel regarding the applicability of **Commonwealth v. Kitchen**, 181 A.3d 337 (Pa. Super. 2018) (*en banc*), and **Commonwealth v. Barnes**, 14 A.3d 128 (Pa. Super. 2011), the trial court denied the motion. N.T., 1/16/2019, at 45-54.

*Commonwealth v. Wanner*, 158 A.3d 714, 717-18 (Pa. Super. 2017) (quoting *Commonwealth v. Vogelsong*, 90 A.3d 717, 719 (Pa. Super. 2014) (citations and quotations omitted)).

To sustain a conviction for the crime of false identification to a law enforcement officer, the Commonwealth must prove that Appellant

> furnishe[d] law enforcement authorities with false information about his identity after being informed by a law enforcement officer who is in uniform or who has identified himself as a law enforcement officer that [Appellant] is the subject of an official investigation of a violation of law.

18 Pa.C.S. § 4914(a).

In *Kitchen*, this Court examined section 4914(a). Kitchen was pulled over by a police officer for a traffic violation. 181 A.3d at 338. When the officer approached her car, he asked for her license, registration, and insurance. *Id.* When she could not produce the documents, Kitchen provided false identification. *Id.* at 339. She was charged with and convicted of, *inter alia*, the offense of false identification to a law enforcement officer. *Id.* at 338. On appeal, Kitchen argued that her conviction could not stand because she had not been informed she was the subject of an official investigation. *Id.* at 341. An *en banc* panel of this Court agreed. In interpreting the statute, this Court noted that

> [t]he use of the term "informed" in this context strongly suggests that the legislature intended a statutory element akin to a formal notice requirement, rather than imposing an additional *mens rea* element focused on the accused's inferential knowledge about the presence of an investigation at the time he or she presents false credentials.

*Id.* at 342-43. Further, in **Kitchen** this Court examined **In re D.S.**, explaining

that

> while investigating an armed robbery, plainclothes officers
> approached D.S. and two other individuals in a park, as D.S.
> matched the robbery victim's description of his assailant. The
> police ordered D.S. and his cohorts to put their hands in the air,
> and then demanded their names, ages, and addresses. D.S.
> responded with a fake name. The officers did not identify
> themselves as police, nor did they specifically and/or verbally
> inform D.S. that he was under investigation. Nevertheless, D.S.
> was charged with, and ultimately adjudicated delinquent of, a
> [false identification to a law enforcement officer] offense.

**Kitchen**, 181 A.3d at 344. In **D.S.**, our Supreme Court made clear that

> [u]nder the plain language of the statute, three conditions must
> be satisfied before an individual will be found to have violated [18
> Pa.C.S. § 4914] by providing false information about his identity.
> First, if the law enforcement officer is not in uniform, the officer
> must identify himself as a law enforcement officer. Second, the
> individual must be informed by the law enforcement officer that
> he is the subject of an official investigation of a violation of law.
> Third, the individual must have furnished law enforcement
> authorities with false information after being informed by the law
> enforcement officer that he was the subject of an official
> investigation of a violation of law.

39 A.3d at 974. Because the officers did not identify themselves as police or

specifically inform D.S. that he was under investigation, our Supreme Court

found the evidence was insufficient to support D.S.'s adjudication of

delinquency. *Id.* at 975.

In **D.S.**, our Supreme Court rejected "the Commonwealth's suggestion

that an individual may be 'informed' of an officer's identity and/or purpose by

surrounding circumstances." *Id.* at 974. The **D.S.** Court expounded that

[i]n stating that an individual violates Section 4914 when he provides false information to law enforcement authorities "after being informed by a law enforcement officer" that he is the subject of an official investigation, the General Assembly made clear its intent that such information must be provided to the individual by the law enforcement officer. While the word "informed" might in other contexts carry the broader meaning the Commonwealth suggests, here it is linked to the law enforcement officer, indicating that the information conveyed must come from the law enforcement officer.

In short, there is no language in the statute to suggest that the General Assembly intended that an individual's knowledge could be derived from the surrounding circumstances.

*Id.* at 975.

Thus, this Court held in *Kitchen* that to sustain a conviction for false identification to a law enforcement officer, the Commonwealth must prove that the law enforcement officer informed the individual that he or she was the subject of an official investigation, and that must occur **prior** to the individual's giving false identification. 181 A.3d at 345.

Further, in *Barnes*, a police officer, while conducting a traffic stop for windshield obstructions, encountered Barnes, who was a passenger in the vehicle. 14 A.3d at 128. After Barnes twice gave false identification to the officer, the officer informed Barnes he was under investigation for providing false identification to law enforcement. *Id.* at 129-131. Barnes then gave false identification for a third time. *Id.* at 129. In concluding that the second element of the false identification statute cannot be satisfied by informing the accused he is being investigated for providing false identification to an officer, this Court stated that

> [l]iterally read, the [false identification] statute in question does not make it illegal to provide to a law enforcement authority false information as to one's identity unless and until one is first apprised that he is the subject of an official investigation of a violation of law. If one provides false information as to his identity prior to that point, he has not violated the statute.

*Id.* at 131; *see also Kitchen*, 181 A.3d at 343 ("'[T]he official investigation element of 18 Pa.C.S. § 4914(a) cannot be satisfied solely by an investigation of the individual's providing false information as to his [or her] identity.'") (quoting *Barnes*, 14 A.3d at 131).

Instantly, Appellant challenges the sufficiency of the evidence to establish the second element of the statute, *i.e.*, that an officer must inform the individual that he or she is the subject of an official investigation of a violation of the law.[4] Appellant contends that he was not required to provide identification to Officer Makowski because there was no underlying official investigation of a violation of the law at the time the officer asked Appellant to provide his name, and even if there were such an investigation, Appellant was not the subject of it. *Id.* at 13-29.

The trial court offered the following in support of its determination that Appellant violated the false identification statute.

> The evidence was sufficient to sustain the conviction because Officer Makowski was identified as a police officer. He approached the scene in a marked patrol vehicle, and he was in uniform.

---

[4] Appellant does not challenge the sufficiency of the evidence to satisfy the other two elements of the statute. Appellant does not contest that Officer Makowski identified himself as a police officer, *see* N.T., 1/16/2019, at 9, 12, or that Appellant provided false identifying information, *see id.* at 16, 99.

When Officer Makowski arrived at the scene[,] he had only the information provided to him by dispatch, and was investigating to determine all of the facts and persons involved. He first spoke to Dade and found out that he was the boyfriend, and that his girlfriend [Chandler] walked away from the scene. [Appellant] told the officer that Dade's girlfriend took his phone and walked away with it. According to Officer Makowski, he was investigating this incident as a domestic disturbance to which he believed [Appellant] to be a witness. He was also investigating to determine whether the taking of the phone was a theft. During the course of this investigation, [Appellant] provided false identification even though he was advised he was the subject of the investigation and that if he continued to provide inaccurate information[,] he would be criminally charged. Accordingly, the evidence was sufficient to sustain [Appellant's] conviction.

Trial Court Opinion, 4/3/2019, at 6-7.

We first address whether there is sufficient record evidence that Officer Makowski informed Appellant that he was the subject of an official investigation of a violation of law **prior** to asking for his identification, as mandated by section 4914(a) and our case law. When asked about what happened **after** Appellant gave false identification the **first** time, Officer Makowski testified on direct examination as follows.

Q. After you received a no response from NCIC or no records found in the radio room, what did you do with that?

A. I advised [Appellant] that he was under official investigation, and if he continued to provide false information[,] he would be charged criminally.

Q. At that point what part of the investigation would you say [Appellant] was a part of?

A. The investigation, he was a party involved in the domestic incident. He had a cell phone reportedly taken from his hand. He was a witness to the verbal altercation.

- 9 -

Q. Just to be clear, at that point you didn't suspect him of actually violating any law himself?

A. No.

Q. But you considered him a witness to a potential disturbance or violation of the law?

A. Correct.

N.T., 1/16/2019, at 18-19.

Further, when questioned about his investigation, Officer Makowski testified on direct examination as follows.

Q. With regard to the original [domestic] incident that you had responded to, can you explain what happened with that? Before you're leaving, what happened with that original incident?

A. After speaking with the Chief of Police[,] it [was] determined that the altercation [between Dade and Chandler] was just verbal and there was no crime of action that had been committed.

Q. How long would you say that portion of your investigation took to determine that no charges would be filed against the other two people[, Dade and Chandler]?

A. Approximately 15, 20 minutes maybe.

Q. During that approximate 15 to 20 minutes[,] did any portion of that also include the issue with identifying [Appellant]? Was there overlap there?

A. Throughout the course of the entire investigation, if you're asking, I spent roughly about an hour on scene with the entire investigation. The first 15 or 20 minutes of the investigation focusing on the domestic incident and the remaining time was spent trying to identify [Appellant].

*Id.* at 22-23.

On cross-examination, Officer Makowski testified as follows.

- 10 -

Q.   You said [on direct examination] that it took about 15, 20 minutes to decide that there was actually no domestic crime committed, right?

A.   Correct.

Q.   And yet you were still trying to figure out who [Appellant] was?

A.   [Appellant] was still part of my investigation.

Q.   And yet you decided there was no domestic disturbance that had occurred?

A.   Correct, but that did not end my investigation.

Q.   So after your investigation about the domestic disturbance was over, the only thing left was to find out if [Appellant] was giving you truthful information?

A.   Correct.

*Id.* at 36-37.

After defense had rested, the trial court also questioned Officer Makowski, who testified as follows.

Q.   In the third paragraph down [of the affidavit of probable cause], it reads as follows: "[Appellant] verbally gave me his name as Calvin Clark, with a birthdate of 4/20/1960 and a Social Security number of XXX-XX-6820.  A records check came back negative.  [Officer Makowski] verbally advised [Appellant] that he was the subject of an official investigation, and if he provided [Officer Makowski] with any inaccurate information, he would be charged criminally."

So my question to you is, what was the official investigation that he was the subject of at that time in your mind?

A.   At that time in my mind he was the subject of the investigation for the domestic.

- 11 -

*Id.* at 100, *quoting* Affidavit of Probable Cause, 7/31/2018, at 1 (unpaginated).

Officer Makowski's testimony establishes that the officer informed Appellant that he was the subject of an official investigation of a violation of law **after** the officer asked for his identification, in violation of **Kitchen**, *supra*. Officer Makowski did not testify, nor is there any record evidence, that the officer informed Appellant that he was the subject of an official investigation of a violation of the law for a domestic incident, or any other violation of the law, **prior** to his asking Appellant for identification the first time. Rather, the record shows that, at the time Officer Makowski informed Appellant he was the subject of an official investigation, the officer had already asked Appellant for identification, Appellant had answered, and the officer had performed a records check; it was only at this point that Officer Makowski told Appellant he was the subject of an official investigation and if he **continued** to provide false identification, Appellant could be criminally charged. *Id.* at 18-19, 23, 36-37, 100. The Commonwealth concedes this point as well. Commonwealth's Brief at 10 ("The first time Officer Makowski asked for identification, [Appellant] provided false information and claimed he had no identification on him. **After** attempting, unsuccessfully, to verify this information, Officer Makowski informed [Appellant] that he was the subject of an official investigation.") (emphasis added).

Accordingly, we conclude that the record shows that, when viewing all the evidence in the light most favorable to the Commonwealth, as the verdict winner, the evidence was "so weak and inconclusive that as a matter of law no probability of fact [could have been] drawn from the combined circumstances" by the trial court, as fact-finder, to establish that Officer Makowski informed Appellant, prior to Appellant's providing false identification, that he was being investigated for a violation of law. **See Wanner**, **supra**; **see also Kitchen**, **supra**; **In re D.S.**, **supra**; **Barnes**, **supra**; **Commonwealth v. Eisenhart**, 2019 WL 4233854 at *4 (Pa. Super. 2019)[5] (unpublished non-precedential memorandum) (reversing conviction for false identification to law enforcement officer due to insufficient evidence to establish second element, *i.e.*, officer must inform individual that he or she is the subject of an official investigation of a violation of the law, where evidence showed (1) officer observed Eisenhart drive over white fog line, ran vehicle's registration, determined it was suspended, conducted a traffic stop, and asked for license and registration, (2) Eisenhart provided a false name, (3) officer noticed Eisenhart looked nervous and informed him it was a crime to provide false identification, and (4) officer ran a records check and determined Eisenhart provided a false name).

---

[5] **See** Pa.R.A.P. 126(b) (unpublished non-precedential memorandum decisions of the Superior Court filed after May 1 2019, may be cited for their persuasive value).

Even if Officer Makowski had informed Appellant that he was being investigated for a violation of law before asking him for identification, the Commonwealth contends nonetheless that Appellant was the subject of an official investigation before he provided the false identification the first time. The Commonwealth argues that Officer Makowski was investigating the domestic incident, as well as a possible theft of Appellant's cell phone, at the time he informed Appellant that he was the subject of an official investigation of a violation of law. Commonwealth's Brief at 10-19. Appellant argues there was no underlying official investigation of a violation of the law at the time the officer asked Appellant to provide his name. Appellant's Brief at 13-24.

As discussed *supra*, the Commonwealth's argument is belied by Officer Makowski's own testimony. N.T., 1/16/2019, at 18-19, 22-23, 36-37, 100. Thus, even if the officer had informed Appellant he was the subject of an official investigation of a violation of law prior to asking for his identification, the record evidence, viewed in the light most favorable to the Commonwealth as verdict winner, establishes that Official Makowski had concluded any investigation of either the domestic incident or purported theft at the time he asked Appellant for identification.

However, even assuming *arguendo* that Officer Makowski was still investigating the domestic incident or supposed theft when he asked Appellant for identification, as the Commonwealth contends, Officer Makowski's testimony confirms that he did not suspect Appellant was in violation of the

law until he discovered Appellant provided a false name, birthdate, and social security number. N.T., 1/16/2019, at 19. Rather, when Officer Makowski first asked for identification, he viewed Appellant as a witness to the domestic incident and the victim of a possible theft of Appellant's phone. *Id.* Once Officer Makowski's records check results came back negative, Officer Makowski spent the remainder of his time at the scene trying to identify Appellant. *Id.* at 22-23, 36-37.

In rejecting a similar argument in *Barnes*, this Court noted that "the Commonwealth ostensibly argues that [s]ection 4194 is implicated as long as the police are investigating a matter and then provide the proper notice to the person being questioned. However, to apply [s]ection 4194 in such a fashion would greatly expand the scope of the offense in question, as well as ignore the explicit language of the statute." 14 A.3d at 131. We stated that "if [Barnes] was not yet under official investigation for a violation of law when asked for his name and [date of birth], the provision of false information was not a violation of law." *Id.* at 132. This Court expounded that

> under Fourth Amendment law, unless the stop was accompanied by reasonable suspicion that [Barnes] was in violation of the law or that criminal activity was afoot, the interaction between [Barnes] and [the o]fficer [] was a "mere encounter" and imposed no duty upon [Barnes] to even interact with [the o]fficer [].[6] While we do not condone the providing of false identification information to police officers, applying [s]ection 4914 in the fashion proffered by the Commonwealth would, in effect, impose a criminal liability on anyone for failing to provide truthful information as to his/her identity anytime a police officer asked, regardless of the basis for the request or the level of suspicion accompanying the request. Not only would such an obligation

- 15 -

seemingly contradict the explicit language of the statute, it would seemingly contravene accepted Fourth Amendment jurisprudence.

_____

[6] A mere encounter need not be supported by any level of suspicion, and does not require a person to stop or respond.…

*Barnes*, 14 A.3d at 132 (citation omitted).

Here, Officer Makowski's testimony confirms that his initial questioning of Appellant was a mere encounter because it was not accompanied by reasonable suspicion that Appellant was in violation of the law.[6]  Accordingly, as in *Barnes*, we do not condone Appellant's providing false identification to Officer Makowski, but under the circumstances of this case, Appellant was under no duty to answer truthfully.

Based on the foregoing, we conclude that the Commonwealth produced insufficient evidence to sustain Appellant's false identification to a law enforcement officer conviction.  As such, we reverse his judgment of sentence.

Judgment of sentence reversed.

_____

[6] Officer Makowski testified that when he asked for Appellant's identification, he "didn't suspect Appellant of actually violating the law himself." N.T., 1/16/2019, at 19.  Under *Barnes*, we reject the Commonwealth's contention that Appellant, as a witness and victim, was a "subject" of an official investigation within the meaning of 18 Pa.C.S. § 4914(a).  *See* Commonwealth's Brief at 20-26; *Barnes*, 14 A.3d at 131-32.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/19/19</u>