J-A24045-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA :  IN THE SUPERIOR COURT OF
                                                              :  PENNSYLVANIA
                                                              :
                          v.                             :
                                                              :
                                                              :
CHRISTOPHER SCOTT YOUST             :
                                                              :
                    Appellant                  :  No. 1129 MDA 2024

Appeal from the Judgment of Sentence Entered July 10, 2024
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0003924-2022

BEFORE:  DUBOW, J., KUNSELMAN, J., and BECK, J.

MEMORANDUM BY KUNSELMAN, J.:            **FILED: DECEMBER 31, 2025**

Christopher Scott Youst appeals from the judgment of sentence imposed after a jury convicted him of false identification to law enforcement authorities, a third-degree misdemeanor.[1]  We affirm.

On May 23, 2023, Youst was charged with the above crime after an incident that occurred on August 13, 2022.  At that time, Youst had four other open criminal dockets.  The trial court detailed the prolonged procedural history ultimately resulting in Youst's conviction and sentence at this docket as follows:

> On January 22, 2024, the Lancaster County Office of the Public Defender entered its appearance on behalf of [Youst] for all his pending dockets.  Prior to that time, however, several bench

---

[1] 18 Pa.C.S.A. § 4914.

warrants had been issued for [Youst's] arrest for violating his bail conditions.

On January 30, Patrick Manley, Assistant Public Defender, filed a motion for a **Grazier**[2] hearing. The motion referenced a *pro se* filing by [Youst] in which [Youst] cited "numerous conflictions" with the Public Defender's Office. An order was entered on February 12, 2024, scheduling a hearing on the motion for March 8, 2024.

On March 8, 2024, a Rule 150 hearing on [Youst's] most recent bench warrant was scheduled for the same time that [Youst's] **Grazier** hearing was to be held. There is no order shown on the docket entries because [Youst] decided during the hearing that he wanted Attorney Manley to continue to represent him and the court noted on the record that there was no longer a need to hold a **Grazier** hearing.

On May 2, 2024, another order for a **Grazier** hearing to be held on June 18, 2024, was issued by the court following [Youst's] oral motion made during a Status Conference. On June 18, 2024, [Youst] did not appear for the **Grazier** hearing and by order dated June 18, 2024, the court denied [Youst's] request to either represent himself or have new counsel appointed.

On June 28, 2024, [Youst's] case for this docket was listed for the July trial term. During the pre-trial conference, an on-the-record discussion was held with the court, counsel and [Youst] because there appeared to be continued difficulties between [Youst] and Attorney Manley. [Youst] was not incarcerated at the time of the conference and the court told [Youst] that he had to make sure he stayed in touch with his attorney and to make sure that his attorney had a good [phone] number for him. Also discussed was the possibility of holding a **Grazier** hearing prior to the start of trial due to the continuing conflict.

On July 8, 2024, [Youst] did not appear for his trial. Trial proceeded without him and at the conclusion of the trial, the jury found [Youst] guilty [of the false reports charge]. After the verdict was read, the court instructed Attorney Manley to get a message to [Youst] to appear for sentencing the following day.

---

[2] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

On July 9, 2024, at the beginning of the sentencing hearing, the court asked Attorney Manley whether [Youst] had contacted him like he was supposed to do as instructed during the call of the list. Attorney Manley told the court that he had not had communication with [Youst]. In light of the court's instruction to [Youst] during the pre-trial conference, the court found that [Youst's] absence from trial and sentencing was willful and issued a bench warrant for [Youst's] arrest. Sentencing was then postponed until [Youst] could be picked up on the bench warrant.

On July 10, 2024, after [Youst] voluntarily turned himself into the Sheriff's Office, the court sentenced [Youst] to time served to 12 months [of] incarceration and costs. As part of his sentencing conditions, [Youst] was ordered to undergo drug and alcohol evaluation/treatment as necessary and twenty-five hours community service. He was also ordered to comply with all the Standard Rules and Regulations of Lancaster County Adult [Probation] and Parole. The sentencing conditions also stated that the first missed appointment would constitute a violation.

Trial Court Opinion, 1/22/25, at 1-3 (citations to record omitted).

Following sentencing, the prolonged nature surrounding this appeal continued. As summarized by the trial court:

On July 11, 2024, Assistant Lancaster County Public Defender Diana Kelleher entered her appearance on behalf of [Youst]. On July 23, 2024, a Motion to Withdraw as Counsel was filed by the Lancaster County Public Defender's Office asking that the entire office be permitted to withdraw from representing [Youst]. Before a hearing could be held on the Motion to Withdraw, the Public Defender's Office filed a Notice of Appeal to the Superior Court on August 9, 2024, to protect [Youst's] appellate rights.

On August 14, 2024, a Motion to Issue Capias and Bench Warrant was filed and a Bench Warrant was issued for [Youst]. It was alleged that [Youst] had been paroled on July 10, 2024, and he was in violation for failing to report for his first appointment. The warrant was served on August 19, 2024, and [Youst] was committed to the Lancaster County Prison.

On August 27, 2024, after a hearing on the Public Defender's Motion to Withdraw on all of [Youst's] dockets, the

court entered an order granting the request for leave to withdraw for the entire Public Defender's Office.[fn2]

> [fn2] During this hearing, the court heard from Deputy Attorney General [Jaime] Keating that he heard [Youst] tell Attorney Manley to shut the fuck up or he'd punch him in the face. Also during this hearing, [Youst] had objected to the Public Defender being permitted to withdraw stating, "I don't think they should be able to pull out from my cases when they haven't done anything except sabotage my cases."

The court informed [Youst] that an attorney would be appointed for [Youst's] appeal and his other dockets.

On September 9, 2024, Attorney Daniel Bardo was appointed to represent [Youst] on his appeal. On September 11, 2024, the court issued its order requiring [Youst] to file a Concise Statement of Errors Complained of on Appeal. On September 12, 2024, Attorney Bardo filed a Motion to Stay Order for Concise Statement because he had filed an Application to Withdraw as Counsel with the Superior Court.

On October 25, 2024, the Superior Court issued an Order directing the trial court to conduct a *Grazier* hearing to determine whether [Youst] wanted to proceed *pro se*. On December 18, 2024, a hearing was held at which time [Youst] and [Attorney] Bardo appeared. While initially the court was willing to allow [Youst] to proceed *pro se*, the court ultimately denied the request as it became evident that [Youst] did not understand the rules of appellate procedure as the court observed [Youst] leaning over and asking Mr. Bardo questions as soon as the court granted the request. [Youst] also exhibited argumentative and disruptive behavior which has been [Youst's] pattern throughout his court proceedings.

Trial Court Opinion, 1/22/25, at 3-5 (citations to the record omitted). Thereafter, both Youst's counsel and the trial court have complied with Appellate Rule 1925.

Youst raises the following two issues on appeal:

> I.   Did the trial court err when it denied [Youst's] request for self-representation on appeal when he knowingly, intelligently, and voluntarily waived his right to counsel and elected to represent himself?
>
> II.  Does insufficient evidence support [Youst's] conviction for furnishing false identification to law enforcement because police did not inform him that he was "the subject of an official investigation" but, instead, informed him that he was "under an official investigation"?

Youst's Brief at 4.

In his first issue, Youst asserts that the trial court erred in denying his request to proceed *pro se* on appeal.[3] In support of this argument, Youst cites to cases involving the right to self-representation at trial, *see Faretta v. California*, 422 U.S. 806 (1975); *Commonwealth v. Starr*, 664 A.2d 1326 (Pa. 1995), but does not acknowledge whether a similar constitutional right to represent oneself on appeal is guaranteed by either the federal or state constitution. As detailed below, the United States Supreme Court determined that no such right was guaranteed by the federal constitution and that it is still an "open question" whether the Article I, Section 9 of the Pennsylvania

---

[3] We reject the Commonwealth's argument that this issue is waived because Youst did not file a new notice of appeal following the court's *Grazier* hearing. Although we remanded for a determination regarding Youst's representation status, we did not relinquish jurisdiction. Thus, the issue is properly before us.

Constitution guarantees a criminal defendant the right to self-representation on appeal.[4]

In ***Commonwealth v. Figueroa***, 29 A.3d 1177, 1182 (Pa. 2011), this Court noted that the Pennsylvania Supreme Court had previously "indicated a willingness to review whether a defendant has a right to self-representation on appeal when constitutionally entitled to counsel." As we summarized:

> [***Commonwealth v. Staton***, 12 A.3d 277 (Pa. 2010)] involved a direct capital appeal in which the defendant expressed a desire to proceed *pro se*. Counsel therein, relying on ***Martinez v. Court of Appeal of California***, [528 U.S. 152 (2000)], filed a "motion to withdraw" arguing against his own withdrawal, reasoning that the defendant was not constitutionally entitled to continue *pro se*. The ***Martinez*** Court distinguished ***Faretta v. California***, [422 U.S. 806 (1975)], which held that a defendant has the right to self-representation at trial, and concluded that the is no federal constitutional right to self-representation on appeal.
>
> Our Supreme Court in ***Staton*** recognized that its own holding in ***Grazier***, ***supra***, providing that a defendant could proceed *pro se* on appeal, was premised on a federal constitutional analysis that was rendered questionable in light of the ***Martinez*** decision. The Court continued that it had not yet spoken on whether the Pennsylvania Constitution provides for a right to self-representation on appeal and declined to resolve the issue therein.

***Figueroa***, 29 A.3d at 1182.

In ***Staton***, our Supreme Court concluded that it did not have to directly address the constitutional issue because it recognized that its previous case

---

[4] ***See Commonwealth v. Greer***, 316 A.3d 623, 629 n.3 (Pa. 2024) (acknowledging that the defendant "may not have a right to proceed *pro se* on appeal," but noting that the issue was not properly before it).

law had demonstrated that the right to self-representation on appeal was not

absolute. The Court then explained:

> Although counsel identifies an important and open question concerning the right to self-representation on appeal, we ultimately find that we need not resolve the question in order to decide the instant Motion to Withdraw. Rather, for purposes of [our] decision, we may assume that there is a right to self-representation on appeal in Pennsylvania, yet, even so, as counsel recognizes in his alternative argument, the right, even if constitutionally based, is not absolute. ***See***, ***e.g.***, ***Commonwealth v. Jermyn***, [709 A.2d 849, 863 (Pa. 1998)].
>
> In [***Commonwealth v. Rogers***, 645 A.2d 223 (Pa. 1994)], this Court considered whether the appellant Rogers could invoke the right to self-representation after counseled briefs were filed. Rogers sought to waive his right to counsel on the basis of appellate counsel's alleged ineffectiveness. Rogers also filed a *pro se* supplemental brief purporting to amend the counseled brief and add new issues. The Superior Court denied the request and refused to consider the additional issues. Upon further review in this Court, we first noted that it was well-settled that "a criminal defendant or appellant has the right to proceed *pro se* at trial and through appellate proceedings. ***Rogers***, 645 A.2d at 224 (citing ***Faretta***, [***Commonwealth v. Ellis***, 581 A.2d 595 (Pa. Super. 1990)] and Pa.R.Crim.P. 121). We intimated, however, that the right to proceed *pro se* on appeal once the appeal is filed is less clear. Citing to ***Ellis***, we indicated that an appellant does not have the right to submit *pro se* filings that would "confuse and overburden the court." ***Id.*** Thus, we concluded that the appellant was prohibited from engaging in such a tactic and proceeding *pro se* on appeal after counsel had already filed appellate briefs on his behalf. We also emphasized that this conclusion in no way impeded Rogers' right to adequate representation, as he was free to raise counsel's ineffectiveness at a later time.
>
> Similarly, in the context of the right to self-representation for purposes of trial, this Court has noted that the right may be waived or limited when not timely invoked. ***See Jermyn***, 709 A.2d at 863. In ***Jermyn***, the appellant sought to represent himself for purposes of the penalty phase of a capital murder trial. The trial court denied the request as untimely. On appeal to this Court, Jermyn argued that he was entitled to forward his request

during the pendency of trial because the sentencing phase of a capital trial is distinct from the guilt phase. In finding that the lower court did not abuse its discretion, we indicated that there was a timeliness aspect to any such request; further, we noted, courts have refused such requests based on the need to minimize disruptions, to avoid inconvenience and delay, to maintain continuity, and to avoid confusing the jury. **Id.**

**Staton**, 12 A.3d at 282-83 (footnote omitted).

Our Supreme Court in **Staton** then concluded:

The instant case is one step removed from either **Rogers** or **Jermyn**, as the appellate briefs had not yet been filed and the concerns on appeal are different from those at trial. Nevertheless, the cases strongly and logically suggest that a request to proceed *pro se*, and a concomitant motion to withdraw, should be denied at this late stage. . . . Even if it is assumed that appellant has a "right" to represent himself on appeal, permitting counsel to withdraw and allowing appellant to proceed *pro se* at this stage in the appellate proceedings would unnecessarily impede and completely disrupt an already delayed appellate process.

**Id.** at 283 (footnote omitted).

The same concerns arise in the present case. Here, we are faced with the unique situation where, although a counseled brief has been filed, counsel has raised the trial court's alleged error in denying Youst's request to proceed *pro se* on appeal. Nonetheless, we conclude that the delay caused by Youst's most recent request to proceed *pro se*,[5] as well as the fact that Youst's

---

[5] Throughout the litigation at this docket, Youst had repeatedly cited the specific language in Article I, Section 9 that, "[i]n all criminal prosecutions the accused hath a right to be heard by himself and his counsel," to support his claim that he, in essence, is entitled to hybrid representation. In **Commonwealth v. Benjamin**, 2013 WL 11276789 (Pa. Super. 2013) (non-precedential decision), the same attorney who filed the motion to withdraw in

*(Footnote Continued Next Page)*

disruptive behavior added thereto, provides a sufficient basis to reject Youst's claim of error in his first issue.[6] Finally, as noted above, the trial court's decision "in no way impeded [Youst's] right to adequate representation, as he was free to raise counsel's ineffectiveness at a later time." ***Staton***, ***supra***.

In his second issue, Youst challenges the sufficiency of the evidence supporting his false reports conviction. This Court reviews a sufficiency challenge to determine "whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict-winner, was sufficient to enable the fact-finder to conclude that the Commonwealth established all of the elements of the offense[s] beyond a reasonable doubt." ***Commonwealth v. Dewald***, 317 A.3d 1020, 1038 (Pa. Super. 2024) (brackets omitted).

---

***Staton***, raised the same constitutional argument in support of his motion to withdraw in that case. There, however, the issue of self-representation on appeal was not before us because, following a ***Grazier*** remand, the trial court granted counsel's motion to withdraw and "directed that [counsel] serve only as an *amicus* party." ***Benjamin***, at *8. Nonetheless, although this Court did not decide the constitutional issue, we invited "the Pennsylvania Supreme Court to address the specific issue of whether the Pennsylvania Constitution does recognize such a right to appeal as the right to self-representation on appeal appears to be an 'open question.'" ***Id.*** To date, the high court has not accepted our invitation.

[6] Although the trial court explains why Youst's waiver of counsel was not knowingly, intelligently, and voluntarily entered, we may affirm a trial court's ruling on any basis. ***Commonwealth v. Kennedy***, 151 A.3d 1117, 1127 n.14 (Pa. Super. 2016).

Notably, the fact-finder "is free to believe all, part, or none of the evidence when evaluating witness credibility." ***Id.***

A jury convicted Youst of violating the following section of the Pennsylvania Crimes Code:

**§ 4914. False identification to law enforcement authorities**

   **(a) Offense defined.—**A person commits an offense if he furnishes law enforcement authorities with false information about his identity after being informed by a law enforcement officer who is in uniform or who has identified himself as a law enforcement officer that the person is the subject of an official investigation of a violation of law.

   **(b) Grading.**—An offense under this section is a misdemeanor of the third degree.

18 Pa.C.S.A. § 4914.

Here, the trial court summarized the pertinent evidence as follows:

> At [Youst's] trial, the jury first heard from Sergeant Ryan Yoder of the Lancaster City Bureau of Police. Sergeant Yoder testified that he was on duty, in full patrol uniform, on August 13, 2022, at approximately 2:39 a.m. A dispatch was called in for his area for a group of suspicious people on the front porch of a residence and the caller was concerned and scared to leave for work. When Sergeant Yoder arrived, he observed two other police officers, Officers DeJesus and Costello, in conversation with two gentlemen in front of the address. Sergeant Yoder learned from the officers that [Youst] had given his name as Kariim Brown.

> Behind where [Youst] was standing was a posted no trespassing and loitering sign. Sergeant Yoder described the sign as red and white and posted on the front door of [the residence], which is an apartment building. The sign was not obscured by anything and could be clearly viewed and [Youst] was given the opportunity to read the sign.

Sergeant Yoder testified that [Youst] was asked multiple times to confirm the name he was providing to Officer DeJesus. [Youst] had been telling Officer DeJesus that he was not required to give his name. [The other individual provided his information and was released after police verified his identity.] Sergeant Yoder explained why police could ask him his name. [Youst] then gave the name of Kariim Brown with a date of birth of July 6, 1987. Sergeant Yoder testified that [Youst] provided this name of Kariim Brown at least three times and spelled it two times.

When Sergeant Yoder returned to his car, he ran this name and date of birth through the different data bases; he could find no Kariim Brown in this area that had that birth date. Sergent Yoder then requested that a fingerprint reader be brought to the scene. Sergeant Yoder took right and left thumb prints from [Youst] and it came back with a positive hit for [Youst]. Because there was a bench warrant out for [Youst] through the Lancaster County Sheriff's Office, [Youst] was taken into custody.

On both direct and cross-examination, Sergeant Yoder testified regarding what he told [Youst] in order to compel [Youst] to provide his correct identifying information and a video was played for the jury showing footage from Sergeant Yoder's body cam. The video showed that Sergeant Yoder told [Youst] that he was under an official police investigation and if he was lying about his name or birthday, he was going to be charged with giving false information to law enforcement. [Youst] is then heard giving the false name of Kariim Brown to Sergeant Yoder.

Trial Court Opinion, 1/22/25, at 5-7 (citations to record and footnote omitted).

In support of his sufficiency challenge, Youst asserts that the notice requirement of Section 4914 is unambiguous and is read literally. According to Youst, this Court "has repeated that the false identification statute, 'literally read[,]' does not make it illegal to give police false identifying information 'unless and until one is first apprised that he is the subject of an official investigation of a violation of law." Youst's Brief at 22 (citing *Commonwealth v. Kitchen*, 181 A.3d 337, 344 (Pa. Super. 2018) (*en banc*)). Youst further

cites to our Supreme Court's decision in ***In re D.S.***, 39 A.3d 968, 974-75 (Pa. 2012) for the proposition that the notice requirement of the false reports statute cannot be satisfied by considering the surrounding circumstances. Youst's Brief at 23. In short, Youst contends that since Sergeant Yoder informed him he was "under" an official investigation rather than "subject" to one, he cannot be convicted for providing false information.

The trial court found no merit to Youst's claim. The Court first discussed the cases cited by Youst above:

> [Youst] . . . contends that the evidence was insufficient for a conviction for furnishing false identification to law enforcement because the police did not use the precise words "subject of an official investigation" when informing [Youst] as to the reason why he must provide correct information about himself when he was questioned. [(After the Commonwealth rested, Attorney Manley made a motion for judgment of acquittal on this basis).] Thus, the inquiry in this case is whether it was necessary for Sergeant Yoder to use the specific words to [Youst] that [Youst] was "the subject of an official investigation" to sustain the conviction for furnishing false information to a law enforcement officer.

> \*\*\*

> In support of his motion for acquittal, Attorney Manley cited [***Kitchen***, ***supra***]. The Superior Court in that case held police were required to expressly inform [the] defendant that she was the subject of an official investigation to support conviction for false identification. The facts of [***Kitchen***] show that the police officer was on patrol when he observed the defendant's car turning without using a turn signal. After pulling the defendant's car over, he approached the car and asked the defendant for her license, registration and insurance. The defendant was unable to provide any of the information and then she gave the officer her name saying she was "Chelsea Thomas" and a gave a date of birth. She also gave the officer a bank credit card with the same name and a social security number. After the officer ran the name through the data base, he learned that "Chelsea Thomas" had a suspended

license. The officer and his partner then decided to do a "live stop" of the vehicle and removed the defendant from her vehicle and performed a search incident to the live stop of the vehicle. During the search, bags of crack cocaine were discovered and the defendant was placed under arrest. The officer also found another driver's license with a different name under the brake pedal and when he ran that name, he learned that the license was also suspended. The name [on] the license found under the brake pedal contained the defendant's name and the picture on the license looked like the defendant on that day.

After being convicted following a jury trial, the defendant's argument on appeal to the Superior Court *en banc* was that to constitute a crime pursuant to 18 Pa.C.S. § 4914(a), the police must expressly inform an individual that they are [the] "subject of an official investigation of a violation of law," before the individual presents a false identification. The Superior Court agreed with this interpretation of the statute based upon its plain language and based upon the Pennsylvania Supreme Court's decision in [**D.S.**, **supra**] where the Court found Section 4914 to be clear and free from ambiguity.

The Court in **D.S.** stated that under the plain language of the statute, three conditions must be satisfied before an individual will be found to have violated the statute by providing false information about his identity.

> First, if the law enforcement officer is not in uniform, the officer must identify himself as a law enforcement officer. Second, the individual must be informed by the law enforcement officer that he is the subject of an official investigation of a violation of law. Third, the individual must have furnished law enforcement with false information, after being informed by the law enforcement officer that he was the subject of an official investigation of a violation of law.

**Kitchen**, 181 A.3d at 344-34 (citing **D.S.**, 39 A.3d at 974-75).

While **Kitchen** clearly establishes when an individual must be informed that he or she is the subject of an official investigation, it does not establish a requirement that that exact words from the statute, "subject of an official investigation," must be utilized to establish the proper notice requirement. Instead, [the trial] court relies on the language found in **Kitchen** wherein the Court stated: "In order to sustain a conviction for False ID, the Commonwealth must prove that the individual was **told** by

- 13 -

police that he or she was under investigation . . . ." The use of the words "subject of" is unnecessary to inform one that they are being questioned because he is being investigated for committing a crime.

Trial Court Opinion, 1/22/25, at 7-11 (footnotes omitted).

The trial court then explained how the evidence presented by the Commonwealth established all three requirements enumerated in **D.S.**, **supra**, and therefore, supported Youst's false reports conviction:

> In this case, the jury could find from the evidence that law enforcement were called at approximately 2:39 a.m. because two individuals were seen trespassing in front of an apartment building that was posted with [no] trespassing sign. All the officers were in uniform which establishes the first requirement under **D.S.**
>
> Upon arrival, Sergeant Yoder observed the "no trespassing" sign on the front door. [Youst] is seen on body cam video standing on the sidewalk and behind him is the sign posted to the front door. [Youst] is told by Sergeant Yoder that this was his last opportunity – that he is under official police investigation – so if he is lying about his name or birthday, he was going to be charged with false information to law enforcement. This warning from Sergeant Yoder satisfies the second requirement.
>
> After being told he was under an official police [] investigation and warned he could be charged, [Youst] still provided a false name. This satisfies the third [requirement] and based upon the evidence in the record, the jury had sufficient evidence upon which to find [Youst] guilty.

Trial Court Opinion, 1/22/25, at 11-12.

Our review of the record supports the trial court's conclusion that the Commonwealth introduced sufficient evidence to support Youst's false reports conviction. We therefore affirm Youst's judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 12/31/2025